JOHN K. HILL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hill v. Commissioner
Docket No. 20991-86
United States Tax Court
T.C. Memo 1993-454; 1993 Tax Ct. Memo LEXIS 468; 66 T.C.M. (CCH) 909; September 29, 1993, Filed *468 Decision will be entered under Rule 155. For petitioner: Steven C. Bale. For respondent: David W. Sorensen. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income taxes for 1981 and 1982 as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
1981
$ 44,815.35
$ 2,241
[1]
-- 1982
19,726.00
986
[1]
$ 2,084
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After petitioner's concession of the underlying deficiencies, the remaining issues for decision are (1) whether petitioner is liable for the additions to tax under sections 6653(a)(1) and (2) for 1981 and 1982 and (2) whether petitioner is liable for the addition to tax under section 6661 for 1982. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time of the filing of the petition, *469 petitioner resided in Incline Village, Nevada. The underlying deficiencies in this case stem from petitioner's deductions of losses flowing from an investment in Kilburn Vacation-Homeshare, Inc. (Kilburn). Petitioner was graduated from Livingston State College with a degree in physical science. From 1952 to 1956, petitioner served as a lieutenant in the U.S. Air Force. After leaving the Air Force, petitioner operated a small electronic equipment repair business with a friend until 1959. From 1959 to 1973, petitioner was employed by various companies as a salesman in California. From 1973 to 1989, petitioner invested in real property by purchasing, improving, and then selling small family homes. In 1971, petitioner's father died, and petitioner inherited a one-fifth interest in a sawmill located in Alabama. Petitioner's brother was appointed president and was responsible for the management of the sawmill. Petitioner and three other siblings were appointed as vice presidents. Petitioner did not perform any significant duties as vice president and devoted only 14 days per year to sawmill matters. He received wages of $ 13,980 from the sawmill during 1981 and 1982. Additionally, *470 petitioner received dividends from the sawmill in the amounts of $ 143,097 and $ 90,729 for 1981 and 1982, respectively. Since 1975, petitioner has relied upon Nathan Hale (Hale), a certified public accountant (C.P.A.), for the preparation of his tax returns. When petitioner's income began to increase because of the distributions from the sawmill, he was advised by Hale of the need to invest in "some type of tax shelter". Petitioner was reluctant to make an investment without professional assistance because he had previously lost money in stock purchases made on his own. Hale introduced petitioner to Russell Ketron (Ketron), an investment broker. In the mid-1970s, Ketron advised petitioner to purchase gold options from the London Metal Exchange. Although petitioner believed that he sustained a loss on the gold options, the IRS disallowed it. Subsequently, petitioner met with Hale and Ketron to discuss other "tax shelter opportunities". Hale and Ketron advised petitioner to invest in Kilburn, a corporation that operated and sold vacation home time-shares in Park City, Utah. Each investment unit represented a 1/350 undivided interest as a tenant in common with exclusive possession *471 of the property for 1 day each year. The Kilburn offering material stated that one tax advantage was that investors using the accrual method could deduct mortgage interest accrued but not yet paid. Although petitioner did not review the offering material, Hale and Ketron explained to petitioner that, by investing a small amount each year, he would initially recognize large losses but would recognize profits in later years. Petitioner questioned Hale and Ketron as to the validity of Kilburn. He expressed his desire to invest only in an entity that would be respected by the IRS so as to avoid a recurrence of the problems he had encountered with the London Metal Exchange options. In evaluating Kilburn, petitioner relied on Hale and Ketron's analysis of the investment and their assurances that lawyers who had reviewed the materials had concluded that the losses would be allowed by the IRS. Petitioner did not visit the Kilburn property or contact any of the individuals involved with Kilburn. Petitioner invested in Kilburn through a partnership with Hale in 1981. In making this investment, petitioner signed a nonrecourse note. However, he was not aware that this note was nonrecourse *472 and, instead, believed that the document that he signed made him liable for annual payments over 30 years. After petitioner invested in Kilburn, he forwarded all materials relating to Kilburn directly to Hale, and he relied on Hale to read the documents and make any necessary decisions. Petitioner invested approximately $ 15,000 in each of 1981 and 1982, and, as his share of the partnership losses, he claimed Schedule E deductions of $ 71,179 and $ 69,396 for 1981 and 1982, respectively. Upon the advice of Hale, petitioner ceased his payments to Kilburn in 1983 due to the likelihood of Kilburn's filing for bankruptcy and because Kilburn had not built petitioner's unit. Petitioner signed his 1981 tax return on April 22, 1982, and filed it on May 3, 1982. On August 15, 1983, when petitioner filed his 1982 income tax return, which was prepared by Hale, he was aware that he was claiming deductions on nonexistent property. OPINION Section 6653(a)
In Ames v. Commissioner, T.C. Memo. 1990-87, affd. sub nom. Hildebrand v. Commissioner, 967 F.2d 350 (9th Cir. 1992), affd. without published opinion sub nom. Waren v. Commissioner, 958 F.2d 370 (4th Cir. 1992), *473 affd. without published opinion sub nom. Chesser v. Commissioner, 952 F.2d 411 (11th Cir. 1992), affd. sub nom. Lukens v. Commissioner, 945 F.2d 92 (5th Cir. 1991), affd. without published opinion 937 F.2d 616 (10th Cir. 1991), the Court disallowed the deductions stemming from Kilburn that were claimed by those investors. Based on that case, the parties entered into a stipulation of settled issues whereby petitioner agreed that he is not entitled to any of the deductions, losses, or credits that he claimed in 1981 and 1982 with respect to his interest in Kilburn. Petitioner, however, maintains that he is not liable for the section 6653(a)(1) and (2) additions to tax for 1981 and 1982 or the section 6661 addition to tax for 1982. Petitioner bears the burden of proving that the additions to tax do not apply. Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982). Section 6653(a)(1) provides that, if any part of any underpayment of tax is due to negligence or intentional disregard of rules and regulations, there shall be added to the tax an amount equal *474 to 5 percent of the underpayment. Section 6653(a)(2) provides for a further addition to tax in the amount of 50 percent of the interest payable on the portion of any underpayment of tax that is attributable to negligence or intentional disregard of rules and regulations. Negligence, as used in section 6653(a), is defined as the "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967)). In some circumstances, good faith reliance on expert advisers negates applicability of the addition to tax for negligence. Ewing v. Commissioner, 91 T.C. 396, 423-424 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991). Here, petitioner contends that he is not liable for the negligence additions to tax because he reasonably and in good faith relied upon the advice of Hale and Ketron in investing in Kilburn and thus exercised due care. However, reliance upon professional advice, standing *475 alone, is not an absolute defense to negligence but, rather, a factor to be considered in the determination of whether the reasonable and prudent person standard is satisfied. Freytag v. Commissioner, 89 T.C. 849, 888-889 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S.    , 111 S. Ct. 2631 (1991). Respondent contends that petitioner's reliance on the assessment of Kilburn by Hale and Ketron was unreasonable on its face, and thus petitioner's failure independently to review or investigate the investment was negligent. Respondent relies on LaVerne v. Commissioner, 94 T.C. 637, 652-653 (1990), affd. without published opinion 956 F.2d 274 (9th Cir. 1992), affd. without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991), as support for the proposition that petitioner's reliance on Hale and Ketron was unreasonable because the amount of the claimed deductions in relation to the amount of the investment would have prompted a prudent investor to make additional inquiries *476 as to the viability of the investment. In LaVerne, which involved investments in limited partnerships created by the same corporation that developed Kilburn, the Court held that advice that taxpayers could deduct over $ 90,000 in interest accruals in 1982 by investing only $ 8,000 in 1982 was suspect on its face and thus created a duty of further inquiry on the part of potential investors. Because those taxpayers did not meaningfully investigate beyond the promotional materials supplied by the limited partnership salespeople and did not research the background of the promoters or developers, the Court found that the taxpayers had not acted reasonably. Here, unlike the investors in LaVerne, petitioner did not rely solely on advice or materials provided by the Kilburn promoters. Instead, petitioner relied upon an evaluation of Kilburn by trusted, independent advisers. Hale had served as petitioner's accountant and provided advice upon which petitioner had relied since 1975. Ketron was introduced to petitioner by Hale. We do not believe that petitioner's experience with the London Metal Exchange was sufficient to destroy petitioner's trust in Hale and Ketron. Moreover, *477 Hale invested with petitioner, thereby enhancing the credibility of the Kilburn advice. Also in distinction from LaVerne, it was not suspect for petitioner to believe that he could invest nominal yearly amounts in exchange for substantial deductions. Believing he was responsible for payments to Kilburn for 30 years, petitioner intended the investment to be long-term. Petitioner thought that Kilburn would generate taxable income to him in later years and that the taxes that would be paid on this later income would "compensate" for the initial tax benefits. Thus, we are satisfied that petitioner did not, at the time of his investment, believe that the large up-front deductions were extreme because he thought that he would pay taxes on Kilburn income in later years. As a result, unlike the circumstances of the taxpayers in LaVerne, when petitioner invested in Kilburn, he was not on notice that the income sheltering advice was suspect. Because he was not on notice that the advice was suspect, petitioner's failure to investigate beyond the advice given by Hale and Ketron was not unreasonable. Respondent further contends that petitioner should have assumed that either Hale *478 or Ketron was being compensated by Kilburn for the units sold and, therefore, reliance on their advice was unreasonable because it was not independent from the Kilburn promoters. In Horn v. Commissioner, 90 T.C. 908 (1988), the Court upheld section 6653(a) additions to tax on taxpayers who invested in gold mine "tax shelters" in reliance on advice by tax return preparers and financial advisers whom the taxpayers knew, or should have known, where being compensated by the shelter promoter. The Court concluded that the prudent person standard was not met because reasonable investors would not make business decisions based upon such nonindependent advice. Id. at 942. The present case is distinguishable from Horn. Respondent only implies and has not proven that there were any ties between Kilburn and Hale or Ketron. We are persuaded that petitioner was reasonable in believing that Hale and Ketron were independent from Kilburn and thus that they would provide an objective evaluation. According to petitioner's unimpeached testimony, Ketron told petitioner that he was "doing this out of a favor because of the problem *479 * * * with the metal investment." As a result, we are satisfied that petitioner had no reason to know, or to assume, that the advice he was given was not independent. Petitioner's reliance also distinguishes him from the Kilburn investors in Ames v. Commissioner, T.C. Memo. 1990-87. Those Kilburn investors were found to be negligent because they relied on claims in the promotional materials without seeking independent tax advice as to the soundness of the investment scheme. Here, in contrast, petitioner relied on independent advice and had no reason to believe that the Kilburn scheme would generate questionable deductions. Under these circumstances, we find that petitioner was reasonable in initially accepting Hale and Ketron's assessment of Kilburn without personally investigating such advice. Petitioner admits that sometime in 1982 he became aware of deductions that were claimed on nonexistent property. Petitioner's 1981 tax return indicates that he signed that return on April 22, 1982, and filed it on May 3, 1982. However, the record does not contain any evidence of petitioner's awareness of any problems with Kilburn when he signed and filed *480 the 1981 return. Therefore, with respect to the 1981 return, we are not persuaded that petitioner received any of the warning signals that would have been sounded by his awareness of deductions claimed on nonexistent property. Instead, we believe that the totality of the circumstances surrounding petitioner's reliance, prior to his awareness of Kilburn's problems, satisfies petitioner's burden of disproving respondent's determination that the negligence additions to tax apply for 1981. Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Thus, we find that petitioner is not liable for the section 6653(a)(1) and (2) additions to tax for 1981. With respect to the 1982 return, however, petitioner's reliance defense collapses. Petitioner admitted that he signed and filed his 1982 tax return knowing that it included deductions on property that did not exist. In light of petitioner's background in real estate investments and his prior experience with the IRS, we do not believe that petitioner acted reasonably and prudently in accepting, without further inquiry, Hale's advice that the 1982 deductions stemming from nonexistent property were proper. Petitioner *481 cites Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408, and Betson v. Commissioner, 802 F.2d 365 (9th Cir. 1986), affg. in part and revg. in part T.C. Memo. 1984-264, as authority for relying on Hale with respect to the positions taken on his tax returns. The facts here, however, are distinguishable from those cases. In Heasley, 902 F.2d at 383, the investors were unsophisticated, moderate-income investors. In Betson, there was no evidence of the taxpayers' notice of erroneous positions taken on the returns. Here, we believe that petitioner's background provided him with enough sophistication to be on notice of potentially erroneous deductions on the 1982 return, once he was made aware of the problems surrounding Kilburn. Therefore, we find that petitioner is liable for the section 6653(a)(1) and (2) additions to tax for 1982. Section 6661
Section 6661(a) provides for an addition to tax in the amount of 25 percent of any underpayment attributable to a substantial understatement of income *482 tax. Pallottini v. Commissioner, 90 T.C. 498, 503 (1988). An understatement is substantial if it exceeds the greater of 10 percent of the correct tax or $ 5,000. Sec. 6661(b)(1)(A). In general, if a taxpayer has substantial authority for the tax treatment of the item in question, or has adequately disclosed the tax treatment of the item on the return, the taxpayer may escape liability for the addition to tax with respect to that item. Sec. 6661(b)(2)(B)(i) and (ii). However, if the item in question is attributable to a tax shelter, as defined in section 6661(b)(2)(C)(ii), the disclosure exception will not apply. Sec. 6661(b)(2)(C)(i)(I). Also in the case of a tax shelter, the substantial authority exception will apply only if there was substantial authority for the treatment of the item on the return and the taxpayer reasonably believed that the treatment of the item was more likely than not the proper tax treatment. Sec. 6661(b)(2)(C)(i)(II). Because the 1982 items in question here are attributable to Kilburn, held to be a "tax shelter" in Ames v. Commissioner, T.C. Memo. 1990-87, petitioner must show substantial *483 authority and a reasonable belief that the treatment was proper. Petitioner contends that there is substantial authority that, if Kilburn had been set up as he understood, the investment would have been valid and the deductions would have been accepted. However, a taxpayer's belief that there is substantial authority for the tax treatment of a particular item is not taken into account in determining whether there actually is substantial authority. Schirmer v. Commissioner, 89 T.C. 277, 284 (1987). In any event, petitioner was aware of Kilburn's problems when he filed his 1982 return and thus cannot claim that he still believed that the investment was structured in a manner permitted under the applicable authorities. Petitioner has failed to cite any authority for the deductions stemming from Kilburn as it was actually structured. See Antonides v. Commissioner, 893 F.2d 656, 660 (4th Cir. 1990), affg. 91 T.C. 686 (1988) (cases that are factually distinguishable do not constitute substantial authority). There is no substantial authority for the position taken on petitioner's 1982 return. *484 Moreover, as we have previously concluded, petitioner's reliance on the advice of Hale with respect to the position on the 1982 return was not reasonable. Petitioner was aware of deductions claimed on nonexistent property, and, in light of his background and experience, such awareness should have put him on notice of possible improper tax treatment. Thus, petitioner cannot claim to have reasonably believed that the treatment of the Kilburn deductions on his 1982 returns was proper. As a result, petitioner fails to meet the requirements of section 6661(b)(2)(C)(i)(II). Petitioner further contends that, under Heasley v. Commissioner, 902 F.2d at 384, the section 6661 addition to tax should not apply because the understatement is attributable to a valuation overstatement. This contention is without merit. In Heasley, the court noted that, pursuant to section 6661(b)(3), the substantial understatement addition to tax does not apply to that portion of the understatement attributable to a valuation overstatement on which there is an addition to tax imposed under section 6659. Here, however, there is no section 6659 addition to tax, and thus section *485 6661(b)(3) is not applicable. Petitioner also contends that the Commissioner should have granted him a waiver of the section 6661 addition to tax because he acted in good faith and in a reasonable manner. Section 6661(c) authorizes the Commissioner to waive any part of the addition to tax imposed under section 6661 on a showing that (1) there was reasonable cause for the understatement and (2) the taxpayer acted in good faith. The denial of a waiver under section 6661(c) is reviewable by the Court on an abuse-of-discretion basis. Mailman v. Commissioner, 91 T.C. 1079, 1083 (1988). The most important factor in determining reasonable cause and good faith under section 6661(c) is "the extent of the taxpayer's effort to assess [his] proper tax liability under the law." Id. at 1084; sec. 1.6661-6(b), Income Tax Regs. Reliance on professional advice constitutes a showing of reasonable cause and good faith under section 6661(c) only if, "under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith." Sec. 1.6661-6(b), Income Tax Regs. Because we have concluded that petitioner's reliance *486 on Hale and Ketron as to the 1982 return was unreasonable, petitioner's reliance argument fails to negate the 1982 section 6661(a) addition to tax. Compare with Vorsheck v. Commissioner, 933 F.2d 757, 759 (9th Cir. 1991) (holding that reasonable reliance on investment advice that is sufficient to negate the section 6661 addition to tax), affg. in part and revg. in part an Oral Opinion of this Court. In any event, petitioner's assertion that his reliance constituted reasonable cause and good faith would serve only to bring him to the point where respondent "may waive all or any part of the addition to tax". Sec. 6661(c); emphasis added. Thus, petitioner must show that the reasonable cause and good faith are so clear that respondent's refusal is arbitrary, capricious, or without sound basis in fact. Mailman v. Commissioner, supra at 1084. Here, where petitioner was aware of deductions claimed on nonexistent property, we cannot say that respondent abused her discretion in denying a waiver. Accordingly, we conclude that petitioner is subject to the 1982 addition to tax under section 6661. Decision will be entered *487 under Rule 155. Footnotes
1. 50 percent of the interest due on the entire deficiency.↩