**James HILDEBRAND, et al., Petitioners–Appellants,**

**v.**

**COMMISSIONER INTERNAL REVENUE SERVICE, Respondent–Appellee.**

**No. 91–70030.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 11, 1992.

Decided June 26, 1992.

Edward G. Lavery, Hercules, Lavery, Bernstein & Kennedy, Dallas, Tex., for petitioners-appellants.

Gary R. Allen, U.S. Dept. of Justice, Tax Div., Washington, D.C., for respondent-appellee.

Before BOOCHEVER, BEEZER and TROTT, Circuit Judges.

TROTT, Circuit Judge:

James and Mary Hildebrand (the "Hildebrands"), and Leland and Irene Waltuck (the "Waltucks") (collectively, the "taxpayers") bought from Kilburn Vacation Homeshares, Inc. ("Kilburn") timeshare vacation homes in and around the Park City ski resort in Utah. The purchase contract provided for a down payment, and small annual interest payments for the first 10 years; the balance of the interest and principal was due in a balloon payment at the end of 30 years. The contract was nonrecourse, so the purchasers could forfeit their timeshares and avoid the final payment. Both the Hildebrands and the Waltucks annually deducted a portion of the total interest due over the life of the contract.

The Commissioner of Internal Revenue ("Commissioner") issued to the taxpayers statutory notices of deficiency. They petitioned the Tax Court for relief; their cases were consolidated with the petitions of several related investors. The Tax Court held for the Commissioner and also assessed against the taxpayers negligence penalties and an accelerated rate of interest. *Ames v. Commissioner*, 58 T.C.M. (CCH) 1470, 1990 Tax Ct. Memo LEXIS 87 (1990). Many of the investors appealed. The Fourth, Fifth, Tenth, and Eleventh Circuits have heard appeals stemming from the Tax Court case,[1] and have affirmed the Tax Court. We have jurisdiction, and we also affirm.

I

In 1981, the taxpayers formed partnerships and purchased from Kilburn timeshare condominiums in Park City, Utah.[2] The condominiums were sold on contract, with the deed to be delivered when the final payment was made. The contract required a down payment, ten annual interest

payments, and a balloon payment at the end of thirty years. The total amount of interest to be paid was determined at the outset of the contract. The taxpayers then adopted the accrual method of accounting and accrued interest using the Rule of 78s,[3] which resulted in immediate substantial tax deductions.

On October 19, 1981, the Hildebrands made a $3500 down payment on their timeshares. (The first of their ten annual interest payments was not due until 1982.) For that tax year, 1981, the Hildebrands deducted $25,290 of accrued interest. The Hildebrands' 1981 deduction was roughly seven times their total expenditure.

On December 30, 1981, the Waltucks made a down payment of $16,000 on their timeshares, and also paid $11,400 in the first of their ten annual interest payments. They claimed a $115,613 deduction on their 1981 tax return. The Waltucks' deduction was roughly four times their total expenditure.

The taxpayers' purchase contracts were nonrecourse. As the taxpayers admit, "[n]aturally, if the value of the timeshare in year 30 was less than the amount due at that time the purchaser would forfeit his timeshare units rather than make the full balloon payment." The Hildebrands' timeshares had a purchase price of $15,750; their balloon payment in year thirty was to be $404,250. The Waltucks' timeshares had a purchase price of $72,000; their balloon payment in year thirty was to be $1,848,000.

The dispute in the Tax Court centered on the valuation of the timeshare units. After hearing from three experts, two from the taxpayers and one from the government, the Tax Court valued the timeshares lower than any of the experts. It determined the Hildebrands had underpaid their 1981 taxes by $7432, and the Waltucks had underpaid

---

1. Other taxpayers appealed to other circuit courts according to where they resided. *See* 26 U.S.C. § 7482(b)(1)(A) (1988).

2. The taxpayers formed partnerships at least in part in order to avoid the Utah usury laws.

3. The Rule of 78s is described in *Kedziora v. Citicorp Nat'l Servs.*, 780 F.Supp. 516 (N.D.Ill.

1991). The Rule assigns to each contractual period a fraction of the total interest owed over the entire contract. The numerator of the fraction is the number of payment periods remaining on the contract; the denominator is the sum of the digits of the term of the loan.

by \$58,156. The court assessed negligence penalties under 26 U.S.C. § 6653(a) (1988) of \$371.60 and \$2908 against the Hildebrands and Waltucks respectively, plus, in both cases, 50% of the interest due on the underpaid tax. The taxpayers also were held liable for an accelerated rate of interest under 26 U.S.C. § 6621(c) (1988). The taxpayers timely appealed.

## II

Most of the taxpayers' contentions are answered in the Fifth Circuit's published opinion in this matter, *Lukens v. Commissioner*, 945 F.2d 92 (5th Cir.1991). The taxpayers claim the Tax Court erred in refusing to allow Francis Longstaff to testify as an expert under Fed.R.Evid. 702. We agree with the Fifth Circuit that "[t]his contention is without merit." *Lukens*, 945 F.2d at 97.

The taxpayers also claim the Tax Court clearly erred in valuing their timeshares lower than any of the trial experts, including the government's expert. We disagree. When expert testimony does not withstand careful analysis, the Tax Court is not bound by such testimony, and may make a determination of the timeshares' value based on its own evaluation of the evidence; the Tax Court's valuation was not clearly erroneous. *See Lukens*, 945 F.2d at 96–97.

The Tax Court's conclusion that the taxpayers' nonrecourse debt was without economic substance also was correct. *See Estate of Franklin v. Commissioner*, 544 F.2d 1045 (9th Cir.1976). In *Estate of Franklin*, the buyers executed a purchase and leaseback of a motel, with a sale price of \$1,224,000. 544 F.2d at 1046–47. The deal was structured as follows:

"Prepaid interest" in the amount of \$75,000 was payable immediately; monthly principal and interest installments of \$9,045.36 would be paid for approximately the first ten years, with [the buyers] required to make a balloon payment at the end of the ten years of the difference between the remaining purchase price, forecast as \$975,000, and any mortgages then outstanding against the property.

The purchase obligation of [the buyers] to the [sellers] was nonrecourse; the [sellers'] only remedy in the event of default would be forfeiture of the [buyers'] interest.

*Id.* at 1046.

The Tax Court in *Franklin* found the transaction was not a true sale, and so disallowed the buyers' tax deductions for depreciation and interest. *Id.* at 1047. This court affirmed, but for different reasons:

We believe the characteristics set out above can exist in a situation in which the sale imposes upon the purchaser a genuine indebtedness within the meaning of section 167(a), Internal Revenue Code of 1954, which will support both interest and depreciation deductions.... [The court discusses cases where genuine indebtedness existed.]

In none of these cases, however, did the taxpayer fail to demonstrate that the purchase price was at least approximately equivalent to the fair market value of the property. Just such a failure occurred here. The Tax Court explicitly found that on the basis of the facts before it the value of the property could not be estimated. In our view this defect in the taxpayers' proof is fatal.

Reason supports our perception. An acquisition such as that of [the buyers] if at a price approximately equal to the fair market value of the property under ordinary circumstances would rather quickly yield an equity in the property which the purchaser could not prudently abandon. This is the stuff of substance. It meshes with the form of the transaction and constitutes a sale.

No such meshing occurs when the purchase price exceeds a demonstrably reasonable estimate of the fair market value. Payments on the principal of the purchase price yield no equity so long as the unpaid balance of the purchase price exceeds the then existing fair market value.

*Id.* at 1047–48 (citations and footnotes omitted).

The court in *Franklin* also spoke directly to the buyers' interest deductions.

Prior to the date at which the balloon payment on the purchase price is required, and assuming no substantial increase in the fair market value of the property, the absence of personal liability on the debt reduces the transaction in economic terms to a mere chance that a genuine debt obligation may arise. This is not enough to justify an interest deduction. To justify the deduction the debt must exist; potential existence will not do. For debt to exist, the purchaser, in the absence of personal liability, must confront a situation in which it is presently reasonable from an economic point of view for him to make a capital investment in the amount of the unpaid purchase price.

*Id.* at 1049. *Estate of Franklin* is not meaningfully distinguishable from the present case. The taxpayers are not allowed to deduct interest on a debt which lacks economic substance.

The taxpayers invite us to follow *Pleasant Summit Land Corp. v. Commissioner*, 863 F.2d 263 (3rd Cir.1988), *cert. denied*, 493 U.S. 901, 110 S.Ct. 260, 107 L.Ed.2d 210 (1989). We decline the invitation for the reasons stated by the Fifth Circuit. *See Lukens*, 945 F.2d at 98–99.

The taxpayers also dispute the additional penalties imposed on them by the Tax Court under 26 U.S.C. §§ 6653(a) and 6621(c). As to § 6621(c), we agree with the Fifth Circuit that the taxpayers were engaged in a sham transaction. *See Lukens*, 945 F.2d at 99–100. We also affirm the imposition on the taxpayers of the negligence penalty under § 6653(a), because the Tax Court did not commit clear error in finding the taxpayers did not exercise due care. *See Allen v. Commissioner*, 925 F.2d 348, 353 (9th Cir.1991). The taxpayers' tax returns were prepared by the accounting firm of Coopers & Lybrand; the taxpayers also reviewed a "tax opinion" from Coopers & Lybrand, although they

admit the opinion "did not come to a conclusion as to whether the IRS would allow the deductions." In the face of a transaction which clearly lacked economic substance, and which was designed to produce tax benefits out of proportion with total investment, these facts do not establish the exercise of due care. *Cf. Sammons v. Commissioner*, 838 F.2d 330, 336–377 (9th Cir. 1988); *Norgaard v. Commissioner*, 939 F.2d 874, 880 (9th Cir.1991).

The decision of the Tax Court is

AFFIRMED.