**Zachary H. SACKS and Salley Sacks, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent– Appellee.**

No. 94–70756.

United States Court of Appeals, Ninth Circuit.

Submitted April 12, 1996. *

Decided May 6, 1996.

---

* The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed. R.App. P. 34(a); Ninth Circuit Rule 34–4.

Michael C. Cohen, De Castro, West, Chodorow, and Burns, Los Angeles, California, for the petitioners-appellants.

Gary R. Allen, Tax Division, United States Department of Justice, Washington, D.C., for the respondent-appellee.

Before: GOODWIN and HAWKINS, Circuit Judges, and JAMES WARE,** District Judge.

GOODWIN, Circuit Judge:

Zachary and Salley Sacks appeal an order imposing penalties for the negligent underpayment of taxes. 26 U.S.C. §§ 6653(a) and 6661(a). We affirm the judgment of the Tax Court.

## I.

The facts of this case are set out in detail in the Tax Court's opinion. We summarize the most pertinent ones here.

The Sacks claimed investment losses and deductions for 1981 and 1982 from their participation in Far West Drilling Associates (FWDA). FWDA is a limited partnership formed in Utah on December 4, 1980. According to its May 11, 1981 offering memorandum, FWDA was to engage in (1) a developmental drilling program, (2) an exploratory drilling program, and (3) the acquisition of a license to use, sell, or lease a new drilling product currently being developed-the Terra–Drill. The partnership offered 220 units at $157,500 per unit, with each investor obligated to pay $15,000 upon subscription and the balance evidenced by three eight percent promissory notes payable on March 1, 1982; March 1, 1983; and January 15, 1994 respectively. The first two payments were to be in the amount of $15,000, and the third in the amount of $112,500.

The prospectus itself strongly emphasized the tax benefits of investing in FWDA. The memorandum explained that the partnership was expected to incur "substantial losses" in its first years of operation, and, in capital letters, stated:

> INVESTMENT IN THE LIMITED PARTNERSHIP INTERESTS OFFERED HEREBY INVOLVES A HIGH DEGREE OF RISK, INCLUDING MATERIAL FEDERAL INCOME TAX RISKS, AND IS NOT RECOMMENDED FOR INVESTORS WITHOUT A SUBSTANTIAL NET WORTH AND A MARGINAL FEDERAL INCOME TAX BRACKET OF AT LEAST 49%

Despite the warnings contained in the prospectus, the Sacks claimed their losses from FWDA as deductions on their 1981 and 1982 taxes. They say that they relied heavily on the services of their accountant, Vincent Sisilli, C.P.A. (Sisilli) in claiming these deductions. The Sacks could not recall any specific advice Sisilli gave concerning the project, but they insisted that Sisilli not only recommended the investment to them, but also advised that he, Sisilli, had made an investment in FWDA. Sisilli's deposition states that he never recommended FWDA to any customers.

To counter Sisilli's testimony, the Sacks introduced a letter they received from Sisilli during 1982, when many FWDA investors· were considering withdrawing from the project. The letter began "Dear Investor," and discussed the results of a meeting between Sisilli, Sisilli's tax attorney, and representatives from Far West. The letter claimed that the partnership appeared to be a "viable investment," and had a "better" chance of surviving an Internal Revenue Service challenge. The letter also reported the successful negotiation of an extension of the third payment, for $112,500, from January 1994 to January 2004. In response to this letter, the Sacks decided not to withdraw from FWDA.

** Honorable James Ware, United States District Judge for the Northern District of California, sitting by designation.

**920**

The Commissioner assessed the Sacks for income tax deficiencies, as well as additions to tax for negligence and substantial underpayment. The Sacks do not contest the finding that the deductions were improper, but argue that they did not act negligently in claiming deductions for their investment losses because they reasonably relied on the expert advice of their accountant, Sisilli. The Tax Court rejected this argument, and the Sacks filed an appeal with this Court.

## II.

█ We review the Tax Court's finding of negligence for clear error. *Wolf v. C.I.R.*, 4 F.3d 709, 715 (9th Cir.1993).

### A. *Process of Determining Negligence*

█ The Sacks first argue that the Tax Court erred by evaluating whether they were negligent in investing in FWDA rather than whether they were negligent in declaring the investment loss as a deduction. The Sacks have cited in support of their appeal *Chamberlain v. C.I.R.*, 66 F.3d 729 (5th Cir.1995). In *Chamberlain*, the Tax Court found that the taxpayers entered into an investment without a profit motive, and then found them negligent. On appeal, the Fifth Circuit applied a bifurcated analysis and held that it was not negligent to claim the losses.

We do not partition the investment and the deduction for loss into separate compartments for negligence analysis, however. *See, e.g., Howard v. C.I.R.*, 931 F.2d 578, 581–82 (9th Cir.1991). *Accord Chakales v. C.I.R.*, 79 F.3d 726 (8th Cir.1996) *and Goldman v. C.I.R.*, 39 F.3d 402, 406–08 (2nd Cir.1994). The tax code allows for the deduction of losses "incurred in any transaction entered into for profit." 26 U.S.C. § 165(c)(2). Therefore, negligence in the claiming of a deduction depends upon both the legitimacy of the underlying investment, and due care in the claiming of the deduction.

### B. *Determination of Negligence*

█ The Sacks' case is similar to that of *Collins v. C.I.R.*, 857 F.2d 1383 (9th Cir. 1988), where we affirmed a Tax Court's order of penalties for negligence. In *Collins* we held that the taxpayers acted unreasonably in claiming losses where the prospectus warned of tax risks. We stated,

> [t]he discussions in the prospectus of high write-offs and the risk of audits should have alerted taxpayers that their deductions were questionable at best. Despite these warning signals, taxpayers did not reasonably investigate the venture before investing.

*Id.* at 1386. *Cf. Hildebrand v. C.I.R.*, 967 F.2d 350, 353 (9th Cir.1992)(holding that, "[i]n the face of a transaction which clearly lacked economic substance, and which was designed to produce tax benefits out of proportion with total investment," reliance on accountants' inconclusive "tax opinion letter" did not establish the exercise of due care.) Similarly, the warnings in the prospectus at issue here warranted further investigation by a prudent investor prior to claiming losses as a tax deduction. *See, e.g., Webb v. C.I.R.*, 60 T.C.M. (CCH) 1085, 1990 WL 161012 (1990), *remanded for consideration and disposition of motion to vacate for lack of jurisdiction*, 17 F.3d 398 (9th Cir.1994), *on remand*, 68 T.C.M. (CCH) 1106, 1994 WL 591945 (1994)(finding that the FWDA prospectus warranted further investigation into the legitimacy of tax deductions).

The Sacks' argument that they relied upon their accountant does not preclude a finding that they were negligent. In *United States v. Boyle*, 469 U.S. 241, 251, 105 S.Ct. 687, 692, 83 L.Ed.2d 622 the Supreme Court explained, "[w]hen an accountant or attorney *advises* a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice." (Emphasis in original.) The Sacks offered virtually no evidence of advice actually given. "Where no reliable evidence exists in the record suggesting the nature of any advice given, a finding of negligence is not erroneous." *Howard*, 931 F.2d at 582 (citation omitted). *See also, Collins*, 857 F.2d at 1386 and *Chakales*, 79 F.3d 726. The best the Sacks were able to provide here was the "Dear Investor" letter. In light of the warnings in the prospectus we can not say that the Tax Court erred in finding the Sacks' reliance on the letter unreasonable. The

Sacks had an obligation to investigate further prior to claiming the deductions. The Tax Court's finding of negligence was supported by evidence and thus was not clearly erroneous.

### III.

The Sacks' appeal from the order imposing penalties for the substantial underpayment of taxes rests solely on their assertion that they were not negligent in claiming the relevant deductions. Because we hold that the Tax Court did not err in its negligence determination, we also affirm the penalties for substantial underpayment.

### IV.

The Sacks also contend that the Tax Court erred in refusing to allow the introduction of a list of five investors in FWDA who were also clients of Sisilli. The Sacks sought to introduce the evidence for purposes of impeaching Sisilli's testimony that he did not advise any of his clients to invest in FWDA. We review the Tax Court's evidentiary ruling for an abuse of discretion, and will not reverse absent some prejudice. *City of Long Beach v. Standard Oil Co.*, 46 F.3d 929, 936 (9th Cir.1995).

Whether or not the Tax Court should have allowed the Sacks to introduce evidence about Sisilli's other clients, the Sacks have failed to show that the exclusion prejudiced their case. First, the court did allow the Sacks to present two witnesses who testified that Sisilli advised them to invest in FWDA. Thus, the list of other investors who were also clients of Sisilli would have been cumulative. Second, given the Sacks' failure to identify with any specificity the alleged advice upon which they relied, evidence that a number of other investors had been clients of Sisilli would have added nothing to the question whether the Sacks had exercised due care.

AFFIRMED.

---

* This case is appropriate for submission on the briefs and without oral argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34–4.