T.C. Summary Opinion 2001-151

UNITED STATES TAX COURT

MICHAEL E. AND JOHANNA S. DAVIS, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17837-99S.                    Filed September 25, 2001.

Johanna S. Davis, pro se.

Timothy S. Sinnott, for respondent.


COUVILLION, Special Trial Judge: This case was heard pursuant to section 7463 of the Internal Revenue Code in effect at the time the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1]  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined that petitioners were liable for the following additions to tax for the years 1982, 1983, 1984, and 1985:

| | Additions to Tax | |
|------|------------------|------------------|
| Year | Sec. 6653(a)(1) | Sec. 6653(a)(2) |
| 1982 | $250 | * |
| 1983 | 25 | ** |
| 1984 | 15 | *** |
| 1985 | 17 | **** |

\*     Fifty percent of the interest due on $5,000.
\*\*    Fifty percent of the interest due on $298.
\*\*\*   Fifty percent of the interest due on $294.
\*\*\*\* Fifty percent of the interest due on $427.

The issue for decision is whether, for 1982 through 1985, petitioners are liable for the additions to tax shown above relating to their participation as a limited partner in a partnership known as Jojoba Research Partners, Hawaii (Jojoba Hawaii or the partnership).

Some of the facts were stipulated, and those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petition was filed, petitioners' legal residence was Colorado Springs, Colorado.

Petitioner husband is a salesman in the telecommunications industry, and petitioner wife is a homemaker. During the years at issue, petitioner husband worked in the telecommunications industry, and petitioner wife worked as an administrative

assistant and office manager for various employers. Petitioner wife's father, Ralph S. Matsuda (Mr. Matsuda), worked in the financial services and products industry during the years at issue and was petitioners' financial adviser. During 1982, Mr. Matsuda introduced petitioners to Jojoba Hawaii, which was being promoted as an agricultural research and development partnership. Jojoba Hawaii was the first agricultural type investment opportunity that had been proposed by Mr. Matsuda to petitioners. He provided petitioners with a fairly voluminous private placement memorandum[2] (the offering), which described the proposed investment and the activities to be conducted through Jojoba Hawaii. Petitioner wife perused the document but could not recall whether petitioner husband examined the document.[3] Petitioners did not consult an attorney, an accountant, or any independent expert knowledgeable in the field of agriculture and, in particular, jojoba production and the economic potential thereof. Petitioners, nevertheless, invested in Jojoba Hawaii.

On their joint 1982 Federal income tax return, petitioners reported wages of $77,665 from petitioner husband's employment with Mark Telephone and $24,426 from petitioner wife's employment with Applied Materials, Inc. Petitioners also reported interest

---

[2] The private placement memorandum consisted of some 47 pages, plus eight exhibits, and a table of contents.

[3] Petitioner husband did not appear at trial.

income of $1,788, taxable dividend income of $182, a State income tax refund of $605, and taxable pension income of $2,100. Petitioners deducted a net loss from Jojoba Hawaii of $12,971, which they reported on Schedule E, Supplemental Income Schedule, as a partnership loss. Thus, petitioners reported total income of $93,795 and a tax liability of $13,959.

On their joint 1983 Federal income tax return, petitioners, in the same fashion, reported wages of $45,989 from petitioner husband's employment and $29,145 from petitioner wife's employment. Petitioners also reported interest income of $2,224, a State income tax refund of $1,803, and a Schedule E net loss from Jojoba Hawaii of $1,017. Thus, petitioners reported total income of $78,144 and a tax liability of $7,515.

On their joint 1984 Federal income tax return, petitioners likewise reported wages of $52,086 from petitioner husband's employment, $30,145 from petitioner wife's employment, interest income of $879, a loss on Schedule C, Profit or (Loss) From Business or Profession, of $15,767 from a commercial fishing activity, a Schedule F, Farm Income and Expenses, net farm loss of $1,650, and a Schedule E loss from Jojoba Hawaii of $1,205. Thus, petitioners reported total income of $64,488 and a tax liability of $3,757.

On their joint 1985 Federal income tax return, petitioners similarly reported wages of $57,059 from petitioner husband's

employment, $31,417 from petitioner wife's employment, interest income of $952, a State income tax refund of $1,490, a loss of $3,468 from the commercial fishing activity, "other gains" of $237, a net farm loss of $1,890, other income of $4,685, and a net loss from Jojoba Hawaii of $1,205. Thus, petitioners reported total income of $89,277 and a tax liability of $8,704.

Jojoba Hawaii was audited by the Internal Revenue Service, and a Notice of Final Partnership Administrative Adjustment was issued to the partnership. The partnership initiated a TEFRA proceeding in this Court. A decision was thereafter entered in Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6, which involved a similar jojoba investment program.[4] In the decided case, this Court held that the partnerships[5] did not directly or indirectly engage in research or experimentation and that the partnerships lacked a realistic prospect of entering into a trade or business. In upholding the Commissioner's disallowance of research and experimental expenditures, the Court found that the agreements between the partnerships and the proposed research and development contractor, U.S. Agri Research & Development Corp. (U.S. Agri), had been designed and entered into solely to provide

---

[4] The tax matters partner of Jojoba Hawaii signed a stipulation to be bound by the outcome of Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6.

[5] Eighteen docketed cases were bound by stipulation by the outcome of Utah Jojoba I Research v. Commissioner, supra.

a mechanism to disguise the capital contributions of limited partners as currently deductible expenditures.  The Court stated that the activities of the partnerships were:

> another example of efforts by promoters and investors in the early 1980's to reduce the cost of commencing and engaging in the farming of jojoba by claiming, inaccurately, that capital expenditures in jojoba plantations might be treated as research or experimental expenditures for purposes of claiming deductions under section 174.

Id.

As a result of Jojoba Hawaii's TEFRA proceeding, and its agreement to be bound, petitioners were assessed tax deficiencies of $5,000 for 1982, $508 for 1983, $294 for 1984, and $346 for 1985, plus interest.  Subsequently, respondent issued notices of deficiency to petitioners for 1982 through 1985 for affected items determining that petitioners are liable for the additions to tax for negligence under section 6653(a)(1) and (2).  These additions to tax are the subject of the instant case.

Section 6653(a)(1) imposes an addition to tax in an amount equal to 5 percent of an underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules or regulations.  Section 6653(a)(2) imposes another addition to tax in an amount equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations.  Respondent's

determinations in the notices of deficiency are presumed correct, and petitioners must establish otherwise.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); cf. sec. 7491(c).[6] Respondent determined that petitioners' underpayments were due to negligence.  Petitioners, therefore, have the burden of proving they were not negligent in deducting their share of the partnership's losses.  Estate of Mason v. Commissioner, 64 T.C. 651, 663 (1975), affd. 566 F.2d 2 (6th Cir. 1977); Bixby v. Commissioner, 58 T.C. 757, 791 (1972); Anderson v. Commissioner, T.C. Memo. 1993-607, affd. 62 F.3d 1266 (10th Cir. 1995).

Negligence is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would exercise under like circumstances.  Anderson v. Commissioner, 62 F.3d 1266, 1271 (10th Cir. 1995), affg. T.C. Memo. 1993-607; Neely v. Commissioner, 85 T.C. 934, 947 (1985); Glassley v. Commissioner, T.C. Memo. 1996-206.  The focus of inquiry is on the reasonableness of the taxpayer's actions in light of his experience and the nature of the investment.  Henry Schwartz

---

[6]  The Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3001, 112 Stat. 726, added sec. 7491(c), which places the burden of production on the Secretary with respect to a taxpayer's liability for penalties and additions to tax in court proceedings arising in connection with examinations commencing after July 22, 1998.  Petitioners do not contend, nor is there evidence, that their examination commenced after July 22, 1998, or that sec. 7491 is applicable in this case.

Corp. v. Commissioner, 60 T.C. 728, 740 (1973); Greene v. Commissioner, T.C. Memo. 1998-101, affd. without published opinion 187 F.3d 629 (4th Cir. 1999); Glassley v. Commissioner, supra; Turner v. Commissioner, T.C. Memo. 1995-363. Whether a taxpayer is negligent in claiming a tax deduction "depends upon both the legitimacy of the underlying investment, and due care in the claiming of the deduction." Sacks v. Commissioner, 82 F.3d 918, 920 (9th Cir. 1996), affg. T.C. Memo. 1994-217; see Greene v. Commissioner, supra.

A taxpayer may avoid liability for negligence penalties under some circumstances if the taxpayer reasonably relied on competent professional advice. See Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. on other issue 501 U.S. 868 (1991). Such reliance, however, is "not an absolute defense to negligence, but rather a factor to be considered." Id. For reliance on professional advice to relieve a taxpayer from the negligence addition to tax, the taxpayer must show that the professional adviser had the expertise and knowledge of the pertinent facts to provide informed advice on the subject matter. Id.

The facts pertinent to the instant case relating to the structure, formation, and operation of Jojoba Hawaii are as discussed in Utah Jojoba I Research v. Commissioner, supra, with the exception of a few specific dates and dollar amounts. Jojoba

Hawaii was organized in December 1982 as a limited partnership for the described purpose of conducting research and development (R & D) involving the jojoba plant. The offering, dated October 28, 1982, provided for a maximum capitalization of $741,000 consisting of 260 limited partnership units at $2,850 per unit. Each unit required a cash downpayment of $1,000 and a promissory note in the principal amount of $1,850, requiring 12 semiannual interest payments of $92.50 during the first 6 years and 40 quarterly payments of $73.70 for the following 10 years. The promissory note contained an acceleration provision in the event of default. The offering was limited to investors with a net worth (exclusive of home, furnishings, and automobiles) of $150,000, or investors whose net worth was $50,000 (exclusive of home, furnishings, and automobiles) and who anticipated that, for the taxable year of the investment, they would have gross income equal to $65,000, or taxable income, a portion of which, but for tax-advantaged investments, would be subject to a Federal income tax rate of 50 percent.

Petitioners' investment was for one limited partnership unit, which required an initial downpayment of $1,000 and execution of a promissory note for $1,850. Petitioners were to make 12 semiannual "interest only" payments for the first 6 years and quarterly principal and interest payments for the following 10 years until the note was fully paid. The record is unclear as

to the total amount petitioners actually paid in connection with their partnership interest.

The offering identified Mr. Matsuda, who was petitioner wife's father and a promoter of the partnership, as the general partner of Jojoba Hawaii and U.S. Agri as the contractor for the R & D program under an R & D agreement.  Additionally, a license agreement between Jojoba Hawaii and U.S. Agri granted U.S. Agri the exclusive right to utilize technology developed for Jojoba Hawaii for 40 years in exchange for a royalty of 85 percent of gross sales of all products produced.  The offering included copies of both the R & D agreement and the license agreement.

Following close examination of these documents, as well as various other items of evidence, this Court held in Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6, that the partnership was never engaged in research or experimentation, either directly or indirectly.  Moreover, this Court found in Utah Jojoba I Research v. Commissioner, supra, that U.S. Agri's attempts to farm jojoba commercially did not constitute research and development, thereby concluding that the R & D agreement was designed and entered into solely to decrease the cost of participation in the jojoba farming venture for the limited partners through large up-front deductions for expenditures that were actually capital contributions.  The Court concluded further that the partnership was not involved in a trade or business and

had no realistic prospect of entering into a trade or business with respect to any technology that was to be developed by U.S. Agri.

Petitioners here contend that their investment in Jojoba Hawaii was motivated primarily by the potential to earn a profit but admit that the promise of tax deductions played a role in their decision. Petitioners contend further that their reliance on the advice of petitioner wife's father, Mr. Matsuda, should absolve them of liability for the negligence penalty in this case. Petitioners also argue that, taking into account their experience and the nature of the investment in Jojoba Hawaii, they exercised the due care that a reasonable and ordinarily prudent person would have exercised under like circumstances. For the reasons set forth below, the Court does not agree with petitioners' contentions.

First, the principal flaw in the structure of Jojoba Hawaii was evident from the face of the very documents included in the offering. A reading of these documents illustrated that the partnership would not be engaged, either directly or indirectly, in the conduct of any research or experimentation, but, rather, the partnership was merely a passive investor seeking royalty returns pursuant to the licensing agreement.[7] Any experienced

---

[7] Indeed, as noted previously, the offering stated that
(continued...)

attorney capable of reading and understanding the subject documents should have understood the legal ramifications of the contents thereof. However, petitioners never consulted an attorney in connection with this investment, nor did they carefully scrutinize the offering themselves. Moreover, petitioners failed to consult an experienced tax accountant regarding the proper deductibility of research and development expenses.

Secondly, in making their investment in Jojoba Hawaii petitioners relied solely on the advice of Mr. Matsuda, who was their financial adviser, as well as petitioner wife's father and a promoter for the partnership. Mr. Matsuda did not appear at trial, and the details in this record surrounding his advice to petitioners about Jojoba Hawaii are scant. The record is devoid of any evidence to show that Mr. Matsuda conducted any independent research or consulted any type of agricultural or jojoba plant expert about the activity. The record indicates that Mr. Matsuda relied solely on the representations made in the offering in rendering his advice to petitioners.

Moreover, the record lacks evidence to show whether Mr. Matsuda had any previous experience with the deductibility of

---

[7](...continued)
the general partner had no previous experience with Jojoba beans and was relying on U.S. Agri to develop technology and plant cultivars.

research and development expenses at the time he advised petitioners about Jojoba Hawaii. These types of expenses would have allowed petitioners certain tax benefits above and beyond what would have been provided by an ordinary business deduction. There is no evidence in the record to suggest that Mr. Matsuda conducted any independent investigation to determine whether the specific research and development proposed to be conducted by or on behalf of the partnership would have qualified for deductions under section 174.

There is also no evidence in the record to suggest that petitioners ever questioned Mr. Matsuda about the facts and/or legal analysis upon which he based his recommendations. Further, the record is devoid of any evidence that petitioners asked Mr. Matsuda to explain the Jojoba Hawaii investment to them, which would seem particularly important given the fact that petitioners clearly did not carefully scrutinize the offering themselves.

The facts here are similar to those in Glassley v. Commissioner, T.C. Memo. 1996-206, in which this Court found that the taxpayers:

> acted on their fascination with the idea of participating in a jojoba farming venture and their satisfaction with tax benefits of expensing their investments, which were clear to them from the promoter's presentation. * * *

Similarly, petitioners here acted on their enthusiasm for the potential uses of jojoba and for the tax benefits offered by the investment.  The evidence suggests that the nature of the advice given by Mr. Matsuda was highly generalized and based primarily on a mere cursory review of the offering rather than on independent knowledge, research, or analysis.  Petitioners failed to show that Mr. Matsuda had the expertise and knowledge of the pertinent facts to provide informed advice on the investment in Jojoba Hawaii.  See <u>Freytag v. Commissioner</u>, 89 T.C. at 888. Accordingly, petitioners failed to establish that their reliance on the advice of Mr. Matsuda was reasonable or in good faith. See <u>Glassley v. Commissioner</u>, <u>supra</u>.

Mr. Matsuda had no background or expertise in the areas of agriculture or jojoba plants.  More importantly, because Mr. Matsuda had a personal profit motive in selling this investment to clients, of which petitioners were aware, he had a conflict of interest in advising petitioners to purchase the limited partnership interests.  The advice petitioners purportedly received from Mr. Matsuda fails as a defense to negligence due to his lack of competence to give such advice and the clear presence of a conflict of interest.  See <u>Rybak v. Commissioner</u>, 91 T.C. 524, 565 (1988).  Petitioners' reliance on the advice of Mr. Matsuda was unreasonable under the circumstances.

Outside of Mr. Matsuda, petitioners made no other inquiry into the viability of the partnership's proposed research and operations. The Court finds it notable that the offering listed at least 15 potential uses of jojoba nuts; yet, petitioners failed to explore the plausibility of any of those potential uses. Some of the potential uses listed in the offering were various lubricants for high-speed or high-temperature machinery, cosmetics, shampoos and soaps, sunscreens, pharmaceuticals, cooking oils, disinfectants, polishing waxes, corrosion inhibitors, candles, animal feed supplements, and fertilizer. Petitioners' failure to investigate independently any of the enumerated potential uses of jojoba plants was unreasonable under the circumstances.

Petitioners had no legal or agricultural background or training; yet, they consulted no one in these fields of endeavor prior to investing in Jojoba Hawaii. Petitioners appear to argue that they felt no need to consult an appropriate expert or experts to examine the substance of the investment because they were relying on the advice of Mr. Matsuda, petitioner wife's father. To the contrary, the Court believes that, at a minimum, petitioners should have contacted an attorney to review the offering and provide legal advice surrounding the partnership. A reasonable and ordinarily prudent investor under the circumstances would have consulted an attorney. Also a

reasonable and ordinarily prudent investor under the circumstances would have consulted a tax adviser about the propriety of deducting research and development expenses. Additionally, the Court does not believe that petitioners would have experienced a great degree of difficulty in contacting the agricultural department of a nearby college or university or going to another reliable source to inquire about the research and development of jojoba plants and their potential commercial usage, if any. Again, a reasonable and ordinarily prudent investor would have at least attempted to make this type of inquiry under the circumstances.

Petitioners were not naive investors and should have recognized the need for independent professional advice. See LaVerne v. Commissioner, 94 T.C. 637, 652 (1990), affd. without published opinion 956 F.2d 274 (9th Cir. 1992), affd. in part without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991); Glassley v. Commissioner, supra. In fact, the offering cautioned that prospective investors should not "construe this memorandum or any prior or subsequent communications as constituting legal or tax advice" and urged investors to "consult their own counsel as to all matters concerning this investment." The offering was replete with statements, including the cover page statement that "THIS OFFERING INVOLVES A HIGH DEGREE OF RISK", warning of tax risks

involved with the investment and the highly speculative nature of the commercial viability of jojoba production. The offering clearly stated on page 8 that the general partner "has no previous experience in dealing in Jojoba beans and is mainly relying on the R & D Contractor to develop technology and plant cultivars over the term of the R & D Contract". Such statements should have raised some degree of suspicion in the mind of a reasonable and ordinarily prudent investor, even one lacking any legal, tax, or agricultural background. However, petitioners did not carefully read the offering, nor did they make any effort to have the investment explained to them prior to investing in Jojoba Hawaii.

The Court is mindful that the Court of Appeals for the Ninth Circuit (Ninth Circuit) has held that experience and involvement of the general partner and the lack of warning signs could reasonably lead investors to believe they were entitled to deductions in light of the undeveloped state of the law regarding section 174. See Kantor v. Commissioner, 998 F.2d 1514 (9th Cir. 1993), affg. in part and revg. in part T.C. Memo. 1990-380. In its holding, the Ninth Circuit explained that the Supreme Court's decision in Snow v. Commissioner, 416 U.S. 500 (1974), left unclear the extent to which research must be in connection with a trade or business for purposes of qualifying for an immediate deduction under section 174. However, here, the partnership was

neither engaged in a trade or business nor conducting research and development, either directly or indirectly.  Additionally, the offering made clear that the general partner, Mr. Matsuda, had no experience in jojoba research and development.  Also, it is apparent from the evidence presented that Mr. Matsuda had minimal involvement in the partnership.  Petitioners are precluded from relying upon a "lack of warning" as a defense to negligence when there is no evidence that a reasonable investigation was ever made, and the offering materials contained many warnings of the tax risks associated with the investment.

On this record, the Court finds that petitioners did not exercise the due care of reasonable and ordinarily prudent persons under the circumstances.  Consequently, the Court holds that petitioners are liable for the negligence additions to tax under section 6653(a)(1) and (2) for each of the years at issue. Respondent is sustained on this issue.

To the extent the Court has failed to address an argument of petitioners herein, the Court concludes such argument is without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

for respondent.