FILED

**NOT FOR PUBLICATION**

FEB 27 2012

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAVID ALTMAN; BEVERLY ALTMAN, <br><br> Petitioners, <br><br> v. <br><br> COMMISSIONER OF INTERNAL REVENUE, <br><br> Respondent. | No. 09-70936 <br><br> Tax Ct. No. 16356-06 <br><br> MEMORANDUM[*] |

Appeal from a Decision of the
United States Tax Court

Argued and Submitted December 8, 2011
San Francisco, California

Before: O'SCANNLAIN, COWEN[**], and BERZON, Circuit Judges.

Dr. David Altman and Beverly Altman appeal an order of the United States

Tax Court holding them liable for negligently claiming a loss on their 1982 tax

return. The Altmans had invested in a project of CAL-NEVA Partners, a Nevada

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]    The Honorable Robert E. Cowen, Senior Circuit Judge for the Third Circuit, sitting by designation.

limited partnership involved in growing jojoba beans. The tax court found the Altmans negligent in claiming the tax loss.

We reverse. The tax court clearly erred in concluding that Dr. Altman's own thorough investigation was insufficient to permit him to make a reasonable decision that the project had some fair prospect of profitability. And the tax court clearly erred in concluding that Dr. Altman's consultation with Mr. Mohler, and his related conduct in claiming the deduction, was inadequate. *See Sacks v. Commissioner*, 82 F.3d 918, 920 (9th Cir. 1996).

Because the tax court's determinations regarding the Altmans' negligence are not supported by the record, we reverse its holding that the Altmans were negligent within the meaning of former § 6653(a) of the Internal Revenue Code for claiming a loss relating to their investment in CAL-NEVA. The decision ordering additions to tax totaling $32,596 is therefore REVERSED.

*Altman v. Commissioner of Internal Revenue*, No. 09-70936

COWEN, Circuit Judge, dissenting:

In reversing the tax court, the majority goes beyond the applicable standard of review for clear error that is limited to determining whether "the [tax court's] account of the evidence is *plausible* in light of the record viewed in its entirety." *Wolf v. C.I.R.*, 4 F.3d 709, 712 (9th Cir. 1993) (emphasis added). Although the majority might disagree with how the tax court weighed the evidence before it, the Court of Appeals "'may not reverse [the tax court's decision] even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" *Id.* at 712-713 (citing *Service Employee Int'l Union v. Fair Political Practices Comm'n*, 955 F.2d 1312, 1317 n.7 (9th Cir. 1992)). Here, the majority substitutes its own weighing of the evidence for the tax court's. But the tax court's conclusion meets the minimum standard of "plausibility in light of the record," *Id.* at 712; the majority's imposition of its own conclusion is an inappropriate overreach of the Court of Appeals' jurisdiction. Consequently, I respectfully dissent from the majority's opinion; the tax court's order should be affirmed.

Negligence in the claiming of a deduction "depends on the legitimacy of the underlying investment, and due care in the claiming of the deduction." *Sacks v.*

*Commissioner*, 82 F.3d 918, 920 (9th Cir. 1996). The determination of negligence is "highly factual" and assesses "the taxpayer's actions in light of the taxpayer's experience and the nature of the investment." *Bass v. C.I.R.*, T.C. Memo 2007-361 (Dec. 5, 2007). The tax court's determination is reviewed for clear error. *Skeen v. C.I.R.*, 864 F.2d 93, 96 (9th Cir. 1989).

**(A) The Legitimacy of the Underlying Investment**

The majority does not appear to take issue with the tax court's finding that the investment itself lacked legitimacy. Rather, the majority bases their decision on their characterization of Dr. Altman's investigation as "thorough" and not "insufficient" so as permit him to make a "reasonable decision that the project had some fair prospect of profitability." This characterization of the investigation is no more "plausib[le] in light of the record" than the tax court's assessment leading it to conclude that the investment lacked legitimacy. *Wolf*, 4 F.3d at 712. And the reasonableness of Dr. Altman's decision on which the majority relies is undermined by the lack of evidence in the record that the project ever had a "fair prospect of profitability"and the evidence, known to Dr. Altman, indicating the contrary.

In considering Dr. Altman's own investigation into the investment, the tax court ultimately found that it was no substitute for the advice of an uninterested

2

third party, of which Dr. Altman did not seek before investing in CAL-NEVA. As the tax court highlighted, it weighed the evidence of Dr. Altman's experience and independent research against the fact that much of Dr. Altman's own analysis was based on the information gleaned from CAL-NEVA's private placement memorandum, which contained significant warnings about the propriety of the investment and reliance on its cash flow projections.[1] *Accord Hansen*, 471 F.3d at 1032 ("a taxpayer cannot negate the negligence penalty through reliance on a

---

[1] Appellants received and reviewed CAL-NEVA's Private Placement Memorandum ("Memorandum"). Under a heading entitled "<u>RISK FACTORS</u>," the Memorandum warns potential investors that they "must be prepared for the possible loss of the entire investment" and that the interests "should be considered highly speculative investments." The section itemizes several factors that might influence the economic viability of CAL-NEVA, including energy shortages, agricultural risks, and research and development risks. Under the risk factor titled "<u>Lack of Operating History of the General Partners</u>," the Memorandum warns that "[t]here can be no assurance that the General Partners will be considered as having substantial assets for the purpose of determining whether the Partnership will be treated as a Partnership for federal income tax purposes."
A significant portion of the "<u>RISK FACTORS</u>" section is dedicated to Federal tax issues. The Memorandum cautions that "most of the tax shelter benefits would be lost to the Limited Partners" if the Partnership was treated as an association taxable as a corporation for federal income tax purposes. And the "Partnership will not seek a ruling from the Internal Revenue Service (Service) as to its tax status as a partnership." Further, in reference to the uncertainty as to what types of expenditures will qualify as research or experimental expenditures, the Memorandum states that "[n]o ruling by the Service has been or will be sought regarding deductibility of the proposed expenditures under Section 174 of the Code." The Memorandum tells prospective investors to consult their own tax advisors regarding the investment in CAL-NEVA.

transaction's promoters or on other advisors who have a conflict of interest"). Just because the majority found Dr. Altman's own analysis "thorough" and not "insufficient," does not mean that the tax court erred in finding Dr. Altman's investigation adequate in light of these warnings. To the contrary, it is plausible to infer that because Dr. Altman had experience in research and development, but no experience in agricultural research and development or agriculture, he should have known to seek independent advice.

Other findings and evidence support the plausibility of the tax court's conclusion that Dr. Altman's investment was illegitimate. There are several examples in the record that indicate the inadequacy of Dr. Altman's investigation and the illegitimacy of the partnership. For instance, the library research Dr. Altman performed was about jojoba plants and the use of jojoba oil generally; there is no finding or evidence that Dr. Altman relied on uninterested sources in specific reference to CAL-NEVA, U.S. Agri, or any other component of the partnership. It would be plausible for the tax court to conclude that Dr. Altman's belief, however well-supported, of the viability of the jojoba bean's potential for profit in general does not constitute an adequate investigation for investing in a specific partnership. Additionally, Dr. Altman did not investigate whether CAL-NEVA was working on mechanical efforts to harvest jojoba beans, even though

4

mechanical harvest was necessary to attain commercial status. And he did not go to the site where the jojoba beans were going to be grown.

Further, several factors known to Dr. Altman at the time, in addition to the warnings in the placement memorandum about the risk factors and tax consequences, indicated an almost-certain illegitimacy of the partnership. Dr. Altman was aware that the partnership did not own any land or crops, there was no structured market or distribution system for jojoba beans, and no market analysis was conducted about jojoba beans. The general partner had no agricultural experience. Furthermore, the minimum capitalization and capital was reduced just before Dr. Altman's investment. The cash flows were not optimistic. In his testimony, Dr. Altman offers little to no explanation for how he justified the investment in light of these risks.

Upon the record viewed in its entirety, the tax court's conclusion that Dr. Altman's investment lacked legitimacy is plausible, at the very least. There are sufficient examples of how Dr. Altman's investigation was inadequate, a plausible explanation for why his independent research and analysis, regardless of his experience, are insufficient to cure these inadequacies, and evidence, known by Dr. Altman at the time of investing, that clearly calls into question the legitimacy of the partnership.

5

**(B) Due Care in Claiming the Deduction**

The tax court's conclusion that Dr. Altman did not exercise due care in claiming the deduction is also plausible in light of the record. On this point, the majority implies that Dr. Altman's consultation with his accountant was adequate to justify claiming the deduction. In light of the record, this sets a low standard on a taxpayer in claiming such a deduction. Beyond the fact that Dr. Altman had a conversation about the deduction with his accountant, there is no evidence that the accountant advised him to claim the deduction. Rather, the record implies that the accountant had doubts about the investment. On this record, it is just as plausible to conclude the accountant advised Dr. Altman to take the deduction as it is to conclude that he advised him not to, or that if Dr. Altman did he would be subject to a negligence penalty.

Even assuming that the accountant advised Dr. Altman on this issue, there is no evidence of the specific information on which accountant based the advice. He certainly did not base any advice on a firsthand analysis of any document relating to the partnership. If the accountant gave advice at all, it was based on notes Dr. Altman made summarizing his understanding of "various [unspecified] documents." Since the advice could have been based on incomplete or inaccurate information created by Dr. Altman, it is plausible to conclude that Dr. Altman's

reliance on such advice was unreasonable. *Skeen v. C.I.R.,* 864 F.2d 93, 96 (9th Cir. 1989).

Ultimately, the record is void of any evidence about the nature of any advice given, the basis for the advice, and the reasonableness of Dr. Altman's reliance on any advice. "'Where no reliable evidence exists in the record suggesting the nature of any advice given, a finding of negligence is not erroneous.'" *Sacks*, 82 F.3d at 920 (quoting *Howard v. C.I.R.*, 931 F.2d 578, 582 (9th Cir. 1991)). The facts that Dr. Altman consulted with his accountant on this issue and ultimately claimed the deduction—two facts considered by the tax court and ultimately determined unpersuasive in light of the lack of evidence about the nature of any advice—do not support the majority's finding of clear error.

### (C) Conclusion

For the foregoing, and contrary to the majority's view, I find no clear error in the tax court's conclusion that Dr. Altman was negligent or that the conclusion is "not supported by the record," as the majority states. Dr. Altman is a sophisticated, accomplished, and poised individual who made a fine appearance at oral argument. But the majority seems to have been distracted by Dr. Altman's credentials and ignores our mandate to "uphold the tax court's finding unless we are 'left with the definite and firm conviction that a mistake has been committed.'"

*Hansen*, 471 F. 3d at 1028. A disagreement with the tax court as to how to weigh the evidence is not a mistake by the tax court. Consequently, I respectfully dissent and would affirm the order of the tax court.