NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUL 13 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

AARON G. FILLER,

Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE,

Respondent-Appellee.

No. 21-71080

Tax Ct. No. 23581-17

MEMORANDUM[*]

Appeal from a Decision of the
United States Tax Court

Argued and Submitted June 15, 2022
Pasadena, California

Before: RAWLINSON and CHRISTEN, Circuit Judges, and BENNETT,[**]
District Judge.

This case features an appeal from a Tax Court decision upholding a deficiency

and an accuracy-related penalty against Appellant Aaron Filler ("Dr. Filler"). Dr.

Filler is a licensed attorney and neurosurgeon who contributed to the development

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Richard D. Bennett, United States Senior District
Judge for the District of Maryland, sitting by designation.

of Diffusion Tensor Imaging ("DTI"), a magnetic resonance imaging technique that allows doctors to visualize nerve tissue in the brain. Dr. Filler and his colleagues invented DTI during a residency in London in 1992, acquired a United States patent for DTI in 1996 (the "360 Patent"), and formed NeuroGrafix, Inc. ("NGI") in 1998 to hold the 360 Patent. In the ensuing decades, Dr. Filler has filed approximately twenty patent infringement suits against corporate and governmental entities for providing DTI services without a license from NGI. Although several parties have settled these suits, no defendant has stipulated to infringement of the 360 Patent, and no court has ruled in Dr. Filler's favor.

Dr. Filler declared a Net Operating Loss ("NOL") of $1,949,613.00 in his amended 2014 tax returns. Although no court has made a finding of infringement, Dr. Filler attributes this loss to an involuntary conversion that occurred when the State of California infringed on the 360 Patent between 2001 and 2013, and thereby reduced the value of his NGI shares. Following an audit, the IRS assessed a notice of deficiency in the amount of $611,367.00 and an accuracy-related penalty of $122,273.00. The Tax Court upheld this decision. On appeal, Dr. Filler challenges the denial of his declared NOL, the characterization of his annual royalties from NGI as ordinary income rather than long-term capital gains, and the assessment of the accuracy-related penalty. We have jurisdiction pursuant to 26 U.S.C. 7482(a)(1). We affirm as to the NOL and the capital gains issue, but we vacate the penalty.

**1.** Section 165 of the Internal Revenue Code enumerates deductible losses and permits taxpayers to declare losses "sustained during the taxable year and not compensated for by insurance or otherwise." 26 U.S.C. § 165. Dr. Filler argues that his NOL reflects the impact of the alleged patent infringement on his NGI shares. This argument fails, as a "diminution in the value" of a capital asset is insufficient to declare a capital loss. *Sunset Fuel Co. v. United States*, 519 F.2d 781, 783 (9th Cir. 1975). Dr. Filler has neither sold nor exchanged his shares, 26 U.S.C. § 165(f), nor shown that they were rendered "worthless during the taxable year," *id.* § 165(g).

Alternatively, Dr. Filler argues that the alleged patent infringement constitutes a Fifth Amendment taking by inverse condemnation—which he characterizes as a casualty loss in the amount of severance damages to his NGI shares. *Cf.* 26 U.S.C. § 165(c)(3). However, the casualty loss provision is inapplicable as a matter of law, as Dr. Filler's shares are "connected with a trade or business." *Id.* Additionally, we have interpreted the "other casualty" provision of § 165(c)(3) to include only "physical damage or loss of the physical property," *Pulvers v. Comm'r*, 407 F.2d 838, 838–40 (9th Cir. 1969), and the Supreme Court has long held that patent infringement does not constitute a Fifth Amendment taking. *Schillinger v. United States*, 155 U.S. 163, 168 (1894).[1] In any event, the record does not support Dr.

_____

[1] Dr. Filler relies on a footnote in *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank* for the proposition that the holder of a patent infringed by the state may pursue "a judicial remedy through a takings or conversion

Filler's assertions, as no court has made a finding of patent infringement and the Tax Court lacks jurisdiction to adjudicate this issue. *See* 28 U.S.C. § 1338(a). Accordingly, we **AFFIRM** the denial of Dr. Filler's declared Net Operating Loss.

**2.** Dr. Filler seeks to classify his $100,000.00 in annual royalties from NGI as long-term capital gains, rather than ordinary income. Dr. Filler seeks capital gains treatment through two provisions of the Internal Revenue Code: (1) Section 1235, which authorizes capital gains treatment of money received as consideration for the transfer of "all substantial rights to a patent;" 26 U.S.C. § 1235(a); and (2) Sections 1222 and 1231, which permit capital gains treatment of proceeds of the sale of capital assets held for more than one year. *Id.* §§ 1222(3), 1231.

Neither provision applies. Sections 1222 and 1231 are facially inapposite, as Dr. Filler held the 360 Patent for only 14 days and served only as an intermediary to facilitate the transfer to NGI. *Cf. Cooper v. Comm'r*, 143 T.C. 194, 207 (2014), *aff'd* 877 F.3d 1086 (9th Cir. 2017). Section 1235(a) does not apply to transfers between related persons—including a corporation and an individual owning 25% or more of its shares. *Id.* § 1235(c). It is undisputed that Dr. Filler owned 75% of NGI's stock at the time he transferred the 360 Patent to NGI in 1998. Accordingly, we **AFFIRM** the classification of Dr. Filler's royalties as ordinary income.

---

claim." 527 US 627, 644 n.9 (1999). This footnote refers to a right of action under the Florida State Constitution—*Florida Prepaid* did not address whether patent infringement may constitute a Fifth Amendment taking.

4

**3.** Section 6662 of the Internal Revenue Code permits the IRS to impose a 20% penalty on any underpayment attributable to: (1) "[n]egligence or disregard of rules or regulations;" or (2) "[a]ny substantial understatement of income tax." 26 U.S.C. § 6662(b). This penalty does not apply if the taxpayer had "reasonable cause for [his] position and acted in good faith." *DJB Holding Corp. v. Comm'r*, 803 F.3d 1014, 1029 (9th Cir. 2015) (citing 26 U.S.C. § 6664(c)(1)). "The Commissioner's decision to impose negligence penalties is presumptively correct," *Collins v. Comm'r*, 857 F.2d 1383, 1386 (9th Cir. 1988), and is only reviewed for "clear error," *Sacks v. Comm'r*, 82 F.3d 918, 920 (9th Cir. 1996).

Dr. Filler claims that he relied on an IRS Form 4549 signed by a revenue agent when declaring his NOL. The Tax Court concluded that Dr. Filler had offered no evidence in support of this assertion. However, during oral arguments, counsel for the Commissioner did not dispute that Dr. Filler had submitted his Form 4549 to the Tax Court, suggesting that its omission was inadvertent. Accordingly, we hereby strike the portion of the June 3, 2022 Order denying Dr. Filler's Motion to Correct the Record, Dkt. No. 57, and **GRANT** that motion as to Dr. Filler's IRS Form 4549 only. *See* Fed. R. App. P. 10(e). As Dr. Filler relied on the signed representations of an IRS Agent when calculating his NOL, it was clear error for the Commissioner to impose an accuracy-related penalty. Accordingly, we **VACATE** the $122,273.00 accuracy-related penalty imposed in this case and **AFFIRM** in all other respects.