T.C. Memo. 2004-265

UNITED STATES TAX COURT

KENNETH AND DOROTHY HITCHEN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 1827-95, 9864-95.        Filed November 22, 2004.

Kenneth Hitchen and Dorothy Hitchen, pro sese.

<u>Alan E. Staines</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

DAWSON, <u>Judge</u>:  These cases were assigned to Special Trial
Judge Stanley J. Goldberg pursuant to the provisions of section
7443A(b)(4), in effect at the time the petitions were filed in
these cases, and Rules 180, 181, and 183.[1]  The Court agrees with

_____

[1]Unless otherwise indicated, section references are to the
Internal Revenue Code in effect during the years in issue, and
                                        (continued...)

and adopts the opinion of the Special Trial Judge, as set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

GOLDBERG, Special Trial Judge: In these consolidated cases,[2] respondent determined the following deficiencies in petitioners' Federal income taxes, additions to tax, and accuracy-related penalties, for the respective taxable years:

|  |  | | Additions to Tax | | |
|  |  | Sec. | Sec. | Sec. | Sec. |
| Year | Deficiency | 6651 | 6653(a) | 6659 | 6661 |
| 1984 | $7,444 | n/a | [1]$372 | $2,233 | $1,861 |
| 1985 | 6,842 | n/a | [1]342 | 2,053 | 1,711 |
| 1987 | 6,532 | [2]$474 | [1]415 | 1,960 | 1,633 |
| 1988 | 7,620 | n/a | 381 | 2,215 | 1,905 |

|  |  | | Accuracy-Related Penalties | | |
|  |  | Sec. | Sec. | Sec. | Sec. |
| Year | Deficiency | 6662(c)[3] | 6662(d)[3] | 6662(e)[3] | 6662(h)[3] |
| 1989 | $9,788 | $1,958 | $1,958 | $1,958 | $3,915 |

[1]In addition, respondent determined that petitioners are liable for the sec. 6653 addition to tax equal to 50 percent of the interest due on the deficiency in 1984, 1985, and 1987.

[2]Respondent conceded this addition to tax at trial.

[3]Sec. 6662(c), (d), (e), and (h) refers to the sec. 6662(a) accuracy-related penalty for negligence or disregard of rules or regulations, substantial understatement of income tax, substantial valuation overstatement, and gross valuation misstatement, respectively.

Respondent further determined that the entire amount of the deficiencies in 1984, 1985, 1987, and 1988 is subject to the

---

[1](...continued)
all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]In docket No. 1827-95, petitioners' taxable years 1984, 1985, 1988, and 1989 are in dispute. In docket No. 9864-95, petitioners' taxable year 1987 is in dispute.

increased rate of interest charged on "substantial underpayment attributable to tax motivated transactions" under section 6621(c).[3]  The issues for decision in these cases are:  (1) Whether petitioners are entitled to farming expense deductions and to general business credits that they claimed with respect to an investment in a sheep breeding partnership promoted by Walter J. Hoyt, III (Mr. Hoyt); (2) whether petitioners are liable for the additions to tax for (a) valuation overstatements and a gross valuation misstatement, (b) negligence or disregard of rules or regulations, and (c) substantial understatements of income tax; (3) whether petitioners are liable for the increased rate of interest charged on substantial underpayments attributable to tax motivated transactions; and (4) whether respondent is equitably estopped from imposing additions to tax and interest on the deficiencies in these cases.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are

---

[3]References to sec. 6621(c) are to sec. 6621(c) as in effect with respect to interest accruing after Dec. 31, 1986.  See Tax Reform Act of 1986, Pub. L. 99-514, sec. 1511(d), 100 Stat. 2746. For interest accruing before that date, but after Dec. 31, 1984, a nearly identical provision was codified at sec. 6621(d).  See id. sec. 1511(c)(1)(A), 100 Stat. 2744; Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 144(a), (c), 98 Stat. 682, 684.  Sec. 6621(c) was repealed in 1989 with respect to returns due after Dec. 31, 1989.  Omnibus Budget Reconciliation Act of 1989(OBRA 1989), Pub. L. 101-239, sec. 7721(b), (d), 103 Stat. 2399, 2400.

incorporated herein by this reference.  Petitioners resided in Weed, California, on the dates the petitions were filed in these cases.

I.   Petitioners and Their Investment

Petitioner husband (Mr. Hitchen) was raised in England, where he left school around the age of 14.  Mr. Hitchen worked at various jobs and then served in the military for 5 years. Petitioners were married in 1953, and they came to the United States in 1956.  Mr. Hitchen began working at General Mills in Lodi, California, in 1958, and he continued working there through the years in issue.  Mr. Hitchen earned wage income of $45,353 in 1984, $47,746 in 1985, $51,797 in 1986, $50,574 in 1987, $50,004 in 1988, and $57,076 in 1989.  Petitioner wife (Ms. Hitchen) worked in an office prior to coming to the United States in 1956, but she has not worked outside the home since that time.

In the latter part of 1986, Mr. Hitchen learned that several of his co-workers at General Mills were involved in investments promoted by Mr. Hoyt.  At that time, Mr. Hoyt was paying approximately $50 per investor as an incentive for current investors to bring in new investors.  Mr. Hitchen asked his co-workers about the investment, and petitioners then decided to look into making an investment themselves.

Petitioners attended several investment meetings together. Following these meetings, petitioners decided to invest in one of

the partnerships promoted by Mr. Hoyt ("Hoyt partnership" or "Hoyt investment"). In connection with the investment, petitioners signed a form on December 17, 1986, titled "Instructions to Hoyt and Sons Ranches--Acknowledgment of Appointment of Power of Attorney". This form provided:

> I have given Walter J. Hoyt III the irrevocable authority to sign my name to a Certificate of Assumption of Primary Liability Form as part of a transfer on a full recourse Promissory Note in the amount of $190,000, that will become part of a transfer of debt agreement between me, the partnership known as Shorthorn Genetic Engineering 1986 Ltd., and HOYT & SONS RANCHES, said note having been delivered to HOYT & SONS RANCHES to pay for breeding cattle purchased from HOYT & SONS RANCHES, an Oregon Partnership, in Burns, Oregon, which are to be held as breeding cattle by the above named Partnership. This authorizes Mr. Hoyt to sign my name on the notes that were made for the purchase of Registered Shorthorn Breeding cattle from HOYT & SONS RANCHES, and no other purpose. I understand I will owe this amount directly to HOYT & SONS RANCHES, and not to my partnership.
>
>      \*     \*     \*     \*     \*     \*     \*
>
> My goal is that the value of my share of the cattle owned by the Partnership, in which you have a secured party interest, must never fall below the amount for which I am personally liable. If the value of my cattle does fall below the amount of my loan, and you become aware of that, you must so notify me within thirty days in order that I may make a damage claim to W.J. Hoyt Sons Management Company for possible default on the Share-Crop Operating Agreement, and/or the cattle fertility warranties.

Upon making the investment, petitioners were told that they would "get some money back when we retired." Petitioners, however, were uncertain how the investment was to provide income or profits. Petitioners did not consult with anyone outside Mr.

Hoyt's organization prior to investing. Petitioners also did not visit or otherwise investigate the cattle partnership prior to making the investment, although at a later time they visited a sheep ranch that they believed was related to their investment.

Petitioners' initial investment was into a cattle partnership known as Shorthorn Genetic Engineering 86-5 (SGE 86-5). Petitioners did not make any payment immediately upon signing the investment documents. Rather, the funds for their initial investment were to be derived from the refunds petitioners were to receive upon filing their tax returns.

By letter dated October 21, 1987, respondent notified petitioners that the refund that petitioners had requested on their 1986 return had been frozen. The letter stated in relevant part:

> We have reviewed certain tax deductions and/or credits which are attributable to the above tax shelter promotion [SGE 86-5]. Based upon our review of that promotion, we believe that the tax deductions and/or credits are not allowable. Accordingly, we have reduced the portion of any refund due to you which is attributable to the tax shelter promotion.
>
> The examination of the tax shelter promotion will be completed as expeditiously as possible. If the examination results in adjustments to your return, you will be afforded the opportunity to exercise your appeal rights.

Prior to preparing petitioners' next tax return, for 1987, Mr. Hoyt's organization transferred petitioners' partnership interest from the SGE 86-5 cattle partnership to a sheep partnership known

as River City Ranches 85-2 (RCR 85-2). Petitioners were told by the Hoyt organization to ignore communications from the Internal Revenue Service (IRS) as they were merely harassing Hoyt investors.

Petitioners continued investing in the Hoyt partnership through approximately 1994. Petitioners continued remitting their Federal income tax refunds to the Hoyt partnership until Mr. Hitchen retired from General Mills in 1991. Starting in approximately 1990, petitioners began making substantial out-of-pocket cash payments in response to various requests and "assessments" by the partnership. Petitioners also were required to pay additional amounts throughout the years representing tax return preparation fees. The losses and credits claimed by petitioners with respect to their taxable years 1984 through 1989 are discussed below; petitioners claimed a deduction for a partnership loss of $42,260 in 1990, but they did not claim a deduction for either a farming loss or a partnership loss in 1991. In a letter to petitioners dated February 6, 1992, Mr. Hoyt stated in relevant part:

> I have been notified by the General Partners office that your 1990 contribution is still past due. Because this balance of $3500 has not been paid we are beginning collection enforcement. Your partnership note authorizes us to repossess shares of unpaid partnership units.
>
> When your cattle, sheep or truck units are taken back the Internal Revenue Service regulations require us to notify them you have debt relief income of about 13

> times the amount you owe. For example, if you owe
> $5000, your income is $65,000. This will be in
> addition to your other income. It will be subject to
> tax at 28 percent (18,200 in this example).

The last payment by petitioners to RCR 85-2 that appears in the record is a payment of $1,000 by check dated March 10, 1994, purportedly for a "tax levy".

II.  Petitioners' Federal Income Tax Returns

Petitioners filed a joint Federal income tax return for each of the taxable years 1984 through 1989. In 1984, the return was prepared by a firm in Lodi, California, that was unaffiliated with Mr. Hoyt. In 1985, no return preparer signed petitioners' return. In 1986 through 1989, the returns were prepared by individuals associated with entities affiliated with Mr. Hoyt. The relevant information from the 1984 through 1989 returns is as follows:

For 1984, petitioners filed a return that reported a total tax liability of $7,586.

For 1985, petitioners filed a return that reported a total tax liability of $7,326.

For 1986, petitioners filed a return that reflected a partnership loss of $35,530, and a general business credit offsetting their tax liability of $452, resulting in zero tax liability and a requested refund of $11,085. Respondent, however, did not send petitioners the requested refund, pursuant to the letter from respondent to petitioners discussed above.

For 1987, petitioners filed a return that reflected a partnership loss of $4,226 and a farming loss of $45,030, resulting in zero regular tax liability but an alternative minimum tax liability of $462.  Petitioners filed with their 1987 return a Form 3800, General Business Credit, on which they claimed a "tentative general business credit" of $21,765. Although the record is not clear, it appears that the source of this credit was a carryforward from the 1986 taxable year. Because petitioners reported zero regular tax liability in 1987, none of this claimed credit was used by petitioners to offset any tax liability for 1987.

After filing their 1987 return, petitioners filed a Form 1045, Application for Tentative Refund, on which they requested refunds with respect to their 1984, 1985, and 1986 taxable years, based on the carryback of the unused general business credit claimed on the 1987 return.  On this form, petitioners reported the following adjusted total tax liabilities:

|  | 1984 | 1985 | 1986 |
|---|---|---|---|
| Income tax | $7,586 | $7,401 | $8,483 |
| General business credit | (7,586) | (7,326) | (7,479) |
| Other credits | -0- | (75) | -0- |
| Regular tax liability | -0- | -0- | 1,004 |
| Alternative minimum tax liability | 142 | 484 | 1,491 |
| Total tax liability | 142 | 484 | 2,495 |

For 1988, petitioners filed a return that reflected a farming loss of $39,443, resulting in zero tax liability.

For 1989, petitioners filed a return that reflected a farming loss of $45,693, resulting in a tax liability of $103.

The partnership loss claimed by petitioners in 1987 was claimed on a Schedule E, Supplemental Income Schedule.[4]  An attachment to the 1987 return stated that the loss of $4,226 was a nonpassive ordinary loss from RCR 85-2.  The farming losses claimed by petitioners in 1987, 1988, and 1989, were reported on Schedules F, Farm Income and Expenses.  Each of the Schedules F listed petitioners as the proprietors of the farming activity, and each stated that petitioners materially participated in the operation during the relevant year.  The losses were derived as follows:

|  | 1987 | 1988 | 1989 |
|---|---|---|---|
| Gross income | -0- | -0- | -0- |
| Depreciation | $(43,530) | $(38,693) | $(38,693) |
| "Board expense" | (1,500) | (750) | (7,000) |
| (Loss) | (45,030) | (39,443) | (45,693) |

No other expenses related to the farming activities were listed on the Schedules F.  The "Detail Depreciation Schedule" accompanying petitioners' return in each of these 3 years described the depreciable property as "breeding sheep".

---

[4]Only the first two pages of petitioners' 1986 return appear in the record.  Therefore, the details surrounding petitioners' claimed partnership loss and general business credit in that year are unknown.  We also note that the record is silent as to whether, and if so how, the 1986 taxable year--which is not before the Court in these cases--was resolved by petitioners and respondent.

Petitioners did not understand the nature of the partnership losses, the farming losses, or the general business credits at the time they signed their returns and the Form 1045, but they did not seek advice concerning these items.

Respondent issued petitioners a notice of deficiency reflecting the deficiencies and additions to tax as heretofore set forth in detail. The underlying deficiencies in 1984 and 1985 are based solely on respondent's disallowance of the general business credit that petitioners sought to carry back to those years using the Form 1045. The underlying deficiencies in 1987, 1988, and 1989 are based on respondent's disallowance of the Schedule F losses, and on computational adjustments to petitioners' itemized deductions resulting from these Schedule F adjustments. The Schedule F losses were disallowed on several grounds, including respondent's determination that petitioners did not meet the "at risk" requirements of section 465. The general business credits also were disallowed on several grounds, including respondent's determination that the underlying property did not meet the requirements of section 46(c)(8). The partnership loss claimed by petitioners in 1987 was not disallowed in the notice of deficiency because respondent determined it to be a partnership item subject to the provisions of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324. Based on the above adjustments, respondent

determined that the amounts of tax required to be shown on petitioners' returns, accepting the partnership item on the 1987 return as correct, are $7,586 in 1984, $7,326 in 1985, $8,301 in 1987, $7,620 in 1988, and $9,788 in 1989.

OPINION

Taxpayers generally bear the burden of proving the Commissioner's determinations in a notice of deficiency to be in error. Rule 142(a). While section 7491 may shift the burden of production and/or burden of proof to the Commissioner in certain circumstances, this section is not applicable in these cases because respondent's examination of petitioners' returns did not commence after July 22, 1998. See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727.

I.   Farming Losses and General Business Credits

Taxpayers are required to maintain records sufficient to establish the amounts of income, deductions, and other items which underlie their Federal income tax liabilities. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.

Petitioners' position regarding the farming losses and the general business credits is unclear. Because their arguments focus on the amount of money that they invested in the Hoyt partnership rather than on the items appearing on their returns, and because petitioners admit that they do not know how the

deductions and credits were derived, petitioners appear to have conceded the merits of these items. Furthermore, petitioners did not set forth clear and concise assignments of error in their petitions concerning these items. See Rule 34(b)(4). In any event, petitioners have provided no substantiation or other evidence concerning the farming losses or the general business credits related thereto. In the absence of substantiation, petitioners are not entitled to the farming loss deductions or the credits. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. We therefore sustain respondent's determinations as to the underlying deficiencies in these cases.

## II. Additions to Tax

### A. Valuation Overstatements

With respect to petitioners' taxable years 1984, 1985, 1987, and 1988, section 6659(a)[5] generally imposes an addition to tax on any portion of an underpayment of income tax by an individual which is "attributable to a valuation overstatement". A "valuation overstatement" exists "if the value of any property, or the adjusted basis of any property, claimed on any return is 150 percent or more of the amount determined to be the correct amount". Sec. 6659(c)(1). The addition to tax applies only if

---

[5]References to sec. 6659 are to sec. 6659 as in effect with respect to returns that were filed after Dec. 31, 1981, and that were due before Jan. 1, 1990. See Economic Recovery Tax Act of 1981, Pub. L. 97-34, sec. 722(a), 95 Stat. 341; OBRA sec. 7721, 103 Stat. 2395.

an underpayment for a taxable year that is attributable to valuation overstatements is $1,000 or greater.  Sec. 6659(d). The amount of the addition to tax varies depending upon the size of the discrepancy in the valuation.  Sec. 6659(b).  The Secretary has the discretion to waive the section 6659 addition to tax if the taxpayer shows that there was a "reasonable basis for the valuation" and that the claim was "made in good faith." Sec. 6659(e).

With respect to petitioners' taxable year 1989, section 6662(a) imposes a 20-percent accuracy-related penalty on the portion of an underpayment attributable to any one of various factors, one of which is a "substantial valuation misstatement under chapter 1".  Sec. 6662(b)(3).  A "substantial valuation misstatement under chapter 1" exists "if * * * the value of any property (or the adjusted basis of any property) claimed on any return of tax imposed by chapter 1 is 200 percent or more of the amount determined to be the correct amount".  Sec. 6662(e)(1). The penalty applies only if an underpayment for a taxable year that is attributable to substantial valuation overstatements by an individual taxpayer is greater than $5,000.  Sec. 6662(e)(2). The section 6662(a) penalty is increased to 40 percent in the case of "gross valuation misstatements", which occurs where the overvaluation described above is 400 percent or more, rather than 200 percent or more, of the correct amount.  Sec. 6662(h)(2)(A).

The section 6662(a) penalty is not imposed on any portion of an underpayment where a taxpayer has "reasonable cause for" and "acted in good faith with respect to" such portion. Sec. 6664(c)(1).

In the notice of deficiency, respondent determined that the entire amount of the deficiencies in 1984, 1985, and 1987, and $7,382 of the deficiency in 1988, is attributable to valuations that were more than 250 percent of the correct valuation, resulting in an addition to tax of 30 percent in each year. See sec. 6659(b). Respondent further determined that the entire amount of the deficiency in 1989 is attributable to a valuation that was more than 400 percent of the correct valuation, resulting in an penalty of 40 percent for a gross valuation misstatement in that year. Sec. 6662(a), (e), (h).

Respondent concedes that petitioners are not liable for the valuation overstatement additions to tax in 1987, 1988, and 1989 on the portions of the deficiencies attributable to the disallowance of the Schedule F deductions for boarding fee expenses, because no valuations were involved with these claimed deductions.

Petitioners have presented no evidence concerning the valuations underlying the general business credits and the Schedule F depreciation deductions. Insofar as the deficiencies are attributable to the disallowance of those items, we therefore

sustain respondent's determinations regarding the substantial valuation overstatements and the gross valuation misstatement. Petitioners have not argued, and no evidence in the record suggests, that they had a reasonable basis or reasonable cause for making the claims. Accordingly, with respect to 1984 and 1985--the years in which the entire deficiency was based upon disallowance of the general business credit carrybacks-we hold that petitioners are liable for the section 6659(a) addition to tax with respect to the entire amount of the deficiency in each year. We further hold that petitioners are liable for the section 6659(a) addition to tax in 1987 and 1988, and the 40 percent section 6662(a) penalty in 1989, with respect to that portion of the deficiency in each of those years that is attributable to respondent's disallowance of the Schedule F depreciation deductions. Petitioners, however, are not liable for the respective additions to tax with respect to the remaining portions of the deficiencies in 1987, 1988, and 1989, because these portions were not attributable to valuation overstatements.

Finally, we note that in the notice of deficiency, respondent determined that petitioners are liable for the section 6662(a) penalty in 1989 both for a substantial valuation overstatement and a gross valuation misstatement, resulting in two separate additions to tax. However, the penalty for a gross valuation misstatement is applied in lieu of the penalty for a

substantial valuation overstatement; they cannot both be applied to the incorrect valuation of the same property.  Sec. 6662(h)(1).  Thus, because petitioners are liable for the 40 percent penalty with respect to the gross valuation misstatement in 1989, they are not liable for the 20 percent penalty for a substantial valuation overstatement.

B.  Negligence

With respect to petitioners' taxable years 1984, 1985, and 1987, section 6653(a) would impose two additions to tax on underpayments attributable to negligence or intentional disregard of rules and regulations.  The first addition to tax is equal to 5 percent of the entire amount of an underpayment if any part of the underpayment is due to negligence or intentional disregard of rules or regulations.[6]  The second addition to tax is equal to 50 percent of the interest due on only that portion of the underpayment that is attributable to negligence or intentional disregard of rules or regulations.[7]  Respondent determined that petitioners are liable for both of the additions to tax with

_____

[6]For petitioners' taxable years 1984 and 1985, this addition to tax is imposed under sec. 6653(a)(1).  For petitioners' taxable year 1987, this addition to tax is imposed under sec. 6653(a)(1)(A).

[7]For petitioners' taxable years 1984 and 1985, this addition to tax is imposed under sec. 6653(a)(2).  For petitioners' taxable year 1987, this addition to tax is imposed under sec. 6653(a)(1)(B).

respect to the entire amount of the deficiency in each of 1984, 1985, and 1987.[8]

With respect to petitioners' taxable year 1988, section 6653(a)(1) would impose an addition to tax equal to 5 percent of the entire amount of an underpayment if any part of the underpayment is due to negligence or intentional disregard of rules or regulations.  Respondent determined that petitioners are liable for the section 6653(a)(1) addition to tax with respect to the entire amount of the deficiency in 1988.

With respect to petitioners' taxable year 1989, section 6662(a) would impose a 20-percent accuracy-related penalty on the portion of an underpayment attributable to any one of various factors, one of which is "negligence or disregard of rules or regulations".  Sec. 6662(b)(1).  The section 6662(a) penalty is not imposed on any portion of an underpayment where a taxpayer has "reasonable cause for" and "acted in good faith with respect to" such portion.  Sec. 6664(c)(1).

Negligence is defined as the "'lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'"  Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506

---

[8]The amount reflected in the notice of deficiency for the sec. 6653(a)(1)(A) addition to tax in 1987 appears to be incorrect, in that it exceeds 5 percent of the deficiency in that year.  The correct calculation should be made by the parties pursuant to the Rule 155 computations.

(5th Cir. 1967), affg. in part and remanding in part on another ground 43 T.C. 168 (1964)); see Allen v. Commissioner, 925 F.2d 348, 353 (9th Cir. 1991), affg. 92 T.C. 1 (1989). Negligence is determined by testing a taxpayer's conduct against that of a reasonable, prudent person. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982). Courts generally look both to the underlying investment and to the taxpayer's position taken on the return in evaluating whether a taxpayer was negligent. Sacks v. Commissioner, 82 F.3d 918, 920 (9th Cir. 1996), affg. T.C. Memo. 1994-217.

The Commissioner's decision to impose the negligence addition to tax or penalty is presumptively correct. Collins v. Commissioner, 857 F.2d 1383, 1386 (9th Cir. 1988), affg. Dister v. Commissioner, T.C. Memo. 1987-217; Hansen v. Commissioner, 820 F.2d 1464, 1469 (9th Cir. 1987). A taxpayer has the burden of proving that Commissioner's determination is erroneous and that he did what a reasonably prudent person would have done under the circumstances. See Rule 142(a); Hansen v. Commissioner, supra; Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), affg. T.C. Memo. 1982-337; Bixby v. Commissioner, 58 T.C. 757, 791 (1972).

Good faith reliance on professional advice concerning tax laws may be a defense to the negligence additions to tax. United States v. Boyle, 469 U.S. 241, 250-251 (1985). However,

"Reliance on professional advice, standing alone, is not an absolute defense to negligence, but rather a factor to be considered". Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). In order to be considered as such, the reliance must be reasonable. Id. To be objectively reasonable, the advice generally must be from competent and independent parties unburdened with an inherent conflict of interest, not from the promoters of the investment. Goldman v. Commissioner, 39 F.3d 402, 408 (2d Cir. 1994), affg. T.C. Memo. 1993-480; LaVerne v. Commissioner, 94 T.C. 637, 652 (1990), affd. without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991), affd. without published opinion 956 F.2d 274 (9th Cir. 1992); Rybak v. Commissioner, 91 T.C. 524, 565 (1988); Edwards v. Commissioner, T.C. Memo. 2002-169.

Petitioners invested in the Hoyt partnership in the latter part of 1986. As part of their initial investment in the Hoyt partnership, petitioners gave Mr. Hoyt the authority to sign a promissory note on their behalf in the amount of $190,000. Petitioners trusted the Hoyt organization when they were told that this was a mere formality, necessary for their investment. Petitioners did not investigate either the partnership as a whole, or the implications of the $190,000 promissory note.

Petitioners filed a tax return for 1986, the initial year of their investment, using a tax return preparer affiliated with the Hoyt organization. Petitioners claimed a partnership loss for 1986 that purportedly reduced their tax liability to zero for that year. Relatively soon after filing their 1986 return, in October 1987, respondent notified petitioners that respondent believed that the partnership loss was not allowable and that respondent was holding the refund that petitioners had requested. Despite this warning, petitioners continued with their investment, and they took no steps to verify the legitimacy of Mr. Hoyt's organization, the Hoyt partnership, or the tax claims.

For the next year, 1987, Mr. Hoyt's organization switched petitioners from the partnership named in the IRS warning letter to a different partnership. As instructed by the Hoyt organization, petitioners also began reporting the bulk of the Hoyt-related losses as losses from farming activities rather than from partnerships. For 1987, the claimed Hoyt-related losses purportedly reduced petitioners' tax liability to $462.

Also in 1987, petitioners filed the Form 1045 on which they claimed the carryback of the general business credit, purportedly reducing their 1984 tax liability from $7,586 to $142, and their 1985 tax liability from $7,326 to $484. By 1988, petitioners were claiming the Hoyt losses entirely on Schedules F. These

losses purportedly reduced petitioners' tax liability to a combined total of $103 for 1988 and 1989.

In summary, the tax returns and the Form 1045 filed by petitioners during the years in issue resulted in a claimed total tax liability of $1,191. Mr. Hitchen earned wages during those years totaling $250,753. Petitioners admit that they did not know the reasoning behind the tax benefits touted by the Hoyt organization that led to this nearly complete elimination of Federal tax liability. Yet petitioners did nothing to inquire into the legitimacy of the tax claims other than to assume the returns prepared by the Hoyt organization were correct. Furthermore, most of the "too good to be true" tax benefits were claimed by petitioners within months of receiving the warning letter from respondent, and immediately after the Hoyt organization switched petitioners to a new partnership and advised petitioners to begin reporting losses as having been derived from farming activities rather than from partnerships-- efforts that were apparently designed to avoid detection by the IRS. Petitioners chose to follow Mr. Hoyt's advice, however, and they ignored any communications from the IRS.

While we are mindful of the fact that petitioners were unsophisticated in both investment and tax matters, we conclude that petitioners' actions in relation to the Hoyt investment constituted a lack of due care and a failure to do what

reasonable or ordinarily prudent persons would do under the circumstances. First, petitioners entered into an investment, allegedly involving $190,000 of personal debt, without investigating its legitimacy. Second, and foremost, petitioners trusted individuals who told them that they effectively could escape paying Federal income taxes for a number of years-- petitioners reported a tax liability of $1,191 on $250,753 of income over a 5-year period, based upon advice from Mr. Hoyt's organization--and that they could do so utilizing losses and credits with respect to which petitioners understood neither the source nor the legal rationale. We similarly conclude that petitioners did not have reasonable cause for any of the underpayments resulting from the tax claims related to their investment. These conclusions are reinforced by the fact that petitioners received a warning from respondent within months of requesting their first refund based upon the Hoyt investment, a warning that petitioners ignored. Furthermore, petitioners' reliance on Mr. Hoyt and those in his organization--the promoters of the investment and the persons receiving the bulk of the monetary benefits of the tax claims--was objectively unreasonable. As such, it cannot be a defense to the negligence additions to tax.

Finally, we are also mindful of the fact that petitioners ultimately lost the bulk of the tax refunds that they received,

which they had remitted to Mr. Hoyt as part of their investment and which they never received back. Nevertheless, petitioners believed that this money was being used for their own personal benefit--at the time that they claimed the refunds, they believed that they would eventually benefit from them. Petitioners also lost a substantial amount of out-of-pocket cash which they paid to Mr. Hoyt in the years following the years in issue. In fact, some of these later payments were made in response to not-so-thinly-veiled threats by Mr. Hoyt of retaliatory action if petitioners failed to remit the payments. However unfortunate petitioners' situation became, it cannot alter our conclusion that petitioners were negligent with respect to entering the Hoyt investment, and that they were negligent with respect to the positions that they took on their tax returns and the Form 1045 in the years in issue.

We hold that petitioners are liable for the section 6653 additions to tax for negligence with respect to the entire amount of the deficiency in each of 1984, 1985, 1987, and 1988.

With respect to 1989, we note that only one section 6662(a) penalty may be applied with respect to any given portion of an underpayment, even if that portion is attributable to more than one of the relevant factors. Sec. 1.6662-2(c), Income Tax Regs. Accordingly, we hold that petitioners are liable for the section 6662(a) penalty for negligence with respect to that portion of

the deficiency in 1989 that is not attributable to the gross valuation misstatement, discussed above.

C. <u>Substantial Understatements of Income Tax</u>

With respect to petitioners' taxable years 1984, 1985, 1987, and 1988, section 6661(a) imposes an addition to tax on any underpayment attributable to a substantial understatement of income tax. A substantial understatement of income tax exists if the amount of an understatement in a taxable year exceeds the greater of $5,000 or 10 percent of the tax required to be shown on the return. Sec. 6661(b)(1)(A). An understatement, in turn, is defined generally as the excess of the amount of tax required to be shown on the return over the amount of tax shown. Sec. 6661(b)(2)(A).

The amount of an understatement is reduced in certain situations where a taxpayer has substantial authority for the treatment of an item, or where the taxpayer adequately discloses the relevant facts affecting the treatment of that item. Sec. 6661(b)(2)(B). However, in the case of any item attributable to a "tax shelter", as defined in section 6661(b)(2)(C)(ii), the adequate disclosure exception does not apply, and in order for the substantial authority exception to apply the taxpayer must reasonably believe that the treatment of the item was more likely than not the proper treatment. Sec. 6661(b)(2)(C). Finally, the Secretary has the discretion to waive all or part of the section

6661 addition to tax if the taxpayer shows that he had reasonable cause for the understatement and that he acted in good faith. Sec. 6661(c).

The section 6661(a) addition to tax is not imposed on any portion of a substantial understatement with respect to which an addition to tax under section 6659 is imposed. Sec. 6661(b)(3). If a substantial understatement exists in a taxable year, and the section 6659(a) addition to tax is imposed only with respect to a portion of that substantial understatement, then the section 6661(a) addition to tax is imposed with respect to the remainder of the understatement. Sec. 1.6661-2(f)(1), Income Tax Regs.

As discussed above in connection with the negligence additions to tax, petitioners did not understand the partnership and farming losses and the general business credits, yet they did not seek advice concerning these items. We conclude that petitioners have not shown that they had substantial authority, or that they acted with reasonable cause and in good faith with respect to any portion of the understatements in each of the relevant years. It is also evident from the record that petitioners did not disclose the relevant facts concerning the losses and credits. In the absence of substantial authority or adequate disclosure, the amount of the understatement in each year is not reduced pursuant to section 6661(b)(2)(B) and,

because petitioners did not act with reasonable cause and in good faith, section 6661(c) is not applicable.

In each of the relevant years, 10 percent of the amount of tax required to be shown on petitioners' return is less than $5,000. Because each of the understatements in 1984, 1985, 1987, and 1988, is greater than $5,000, the understatements are attributable to substantial understatements of income tax, as defined in section 6661(b)(1)(A).

We have sustained respondent's determination that petitioners are liable for the section 6659(a) addition to tax with respect to the entire amount of the deficiencies in 1984 and 1985. Thus, we hold that petitioners are not liable for the section 6661(a) additions to tax in those years. Sec. 6661(b)(3).

We have sustained respondent's determination that petitioners are liable for the section 6659(a) addition to tax with respect to the portions of the deficiencies in 1987 and 1988 that are attributable to the disallowance of the Schedule F depreciation deductions. Thus, we hold that petitioners are not liable for the section 6661(a) additions to tax with respect to those portions of the deficiencies in those years. Petitioners, however, are liable for the section 6661(a) additions to tax with respect to the portions of the deficiencies in 1987 and 1988 that are attributable to the disallowance of the Schedule F deductions

for boarding fee expenses.  See sec. 1.6661-2(f)(1), Income Tax Regs.

Finally, we note that, as discussed above, only one section 6662(a) accuracy-related penalty may be applied with respect to any given portion of an underpayment.  Sec. 1.6662-2(c), Income Tax Regs.  Because we have already held that the entire deficiency in 1989 is subject to a section 6662(a) penalty, the substantial understatement of income tax in 1989 does not increase petitioners' liability for the section 6662(a) penalty for that year.

III. Tax Motivated Transactions

Section 6621(c) provides an increased rate of interest for "any substantial underpayment attributable to tax motivated transactions".  A "substantial underpayment attributable to tax motivated transactions" is defined under section 6621(c)(2) as "any underpayment of taxes imposed by subtitle A for any taxable year which is attributable to 1 or more tax motivated transactions if the amount of the underpayment for such year so attributable exceeds $1,000."  A "tax motivated transaction" is defined under section 6621(c)(3)(A) to include "any valuation overstatement (within the meaning of section 6659(c))", "any loss disallowed by reason of section 465(a)", and "any credit disallowed under section 46(c)(8)".  Sec. 6621(c)(3)(A)(i) and (ii).

In general, section 465(a) allows losses "only to the extent of the aggregate amount with respect to which the taxpayer is at risk * * * for such activity". Sec. 465(a)(1). Section 46(c)(8) generally reduces a taxpayer's credit base in property by the amount of nonqualified nonrecourse financing with respect to such property--where the taxpayer and the property are subject to the limitations of section 465--thereby limiting the amount of general business credit available to the taxpayer. Sec 38(a), (b)(1); sec. 46(a), (c)(1), (c)(8)(A) and (B).

Petitioners have not presented any evidence or arguments concerning the imposition of tax motivated interest on the deficiencies. Specifically, petitioners have not argued, and nothing in the record indicates, that respondent is in error concerning his determinations that petitioners did not meet the "at risk" requirements of section 465 with respect to the farming losses, and that the general business credit was disallowed pursuant to section 46(c)(8). We therefore sustain respondent's determination that the section 6621(c) increased rate of interest is applicable with respect to the deficiencies in petitioners' taxable years 1984, 1985, 1987, and 1988.[9] See Rule 142(a).

---

[9]Sec. 6621(c) does not apply with respect to petitioners' taxable year 1989. See supra note 3.

IV.  Equitable Estoppel

Petitioners argued at trial that they object to the imposition of additions to tax and interest on the deficiencies. They argue that respondent knew that there were problems with the Hoyt partnerships, but that respondent nevertheless allowed petitioners to continue in their investment and to keep receiving refunds based on the returns they filed that were prepared by the Hoyt organization.  To the same effect, petitioners stated in a document filed with the Court prior to trial:

> We would like to add, the interest and penalties, we strongly object to.  The fault lies with the Internal Revenue Service.  They allowed us to join in a partnership, that was illegal the year we joined.  The interest and penalties, have been accruing since 1984.

We note that, while this Court has jurisdiction to review the applicability of the section 6621(c) increased rate of interest, discussed above, we generally lack jurisdiction to redetermine the amount of interest due on a deficiency under section 6601 prior to entry of a decision redetermining the deficiency.  See sec. 6621(c)(4); sec. 7481(c), as currently in effect; Rule 261; Pen Coal Corp. v. Commissioner, 107 T.C. 249 (1996); see also sec. 6404(h), as currently in effect (regarding judicial review of a failure to abate interest).  Thus, petitioners' arguments concerning the amount of interest due on the deficiencies is not properly before the Court at this time.  To the extent that petitioners' arguments can be interpreted as a claim that

respondent should be equitably estopped from imposing the additions to tax at issue in these cases, we disagree with petitioners for the reasons discussed below.

"Equitable estoppel is a judicial doctrine that 'precludes a party from denying his own acts or representations which induced another to act to his detriment.'" Hofstetter v. Commissioner, 98 T.C. 695, 700 (1992) (quoting Graff v. Commissioner, 74 T.C. 743, 761 (1980), affd. 673 F.2d 784 (5th Cir. 1982)). It is well established that the doctrine of equitable estoppel should be applied against the Commissioner "'with the utmost caution and restraint.'" Kronish v. Commissioner, 90 T.C. 684, 695 (1988) (quoting Boulez v. Commissioner, 76 T.C. 209, 214-215 (1981), affd. 810 F.2d 209 (D.C. Cir. 1987)). Furthermore, the Supreme Court has stated that the Government may not be estopped on the same grounds as other litigants. OPM v. Richmond, 496 U.S. 414, 419 (1990); Heckler v. Cmty. Health Servs., 467 U.S. 51, 60 (1984).

The following conditions must be satisfied before equitable estoppel will be applied against the Government: (1) A false representation or wrongful, misleading silence by the party against whom the opposing party seeks to invoke the doctrine; (2) an error in a statement of fact and not in an opinion or statement of law; (3) ignorance of the true facts; (4) reasonable reliance on the acts or statements of the one against whom

estoppel is claimed; and (5) adverse effects of the acts or statement of the one against whom estoppel is claimed. Norfolk S. Corp. v. Commissioner, 104 T.C. 13, 60 (1995), affd. 140 F.3d 240 (4th Cir. 1998).

In addition to the traditional elements of equitable estoppel, the Court of Appeals for the Ninth Circuit, to which appeal lies in these cases, requires the party seeking to apply the doctrine against the Government to prove affirmative misconduct. Purcell v. United States, 1 F.3d 932, 939 (9th Cir. 1993). The aggrieved party must prove "'affirmative misconduct going beyond mere negligence'" and, even then, "'estoppel will only apply where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability.'" Purer v. United States, 872 F.2d 277, 278 (9th Cir. 1989) (quoting Wagner v. Director, Fed. Emergency Mgmt. Agency, 847 F.2d 515, 519 (9th Cir. 1988)). Affirmative misconduct requires "ongoing active misrepresentations" or a "pervasive pattern of false promises," as opposed to an isolated act of providing misinformation. Purcell v. United States, supra at 940. Affirmative misconduct is a threshold issue to be decided before determining whether the traditional elements of equitable estoppel are present. Id. at 939.

Petitioners have not met the threshold requirement for equitable estoppel because they have not shown that respondent engaged in affirmative misconduct of any kind.  To the contrary, respondent took efforts to halt petitioners' involvement by freezing their claimed 1986 refund and by notifying petitioners, soon after they filed the return claiming the refund, that respondent believed the deductions claimed on the return were not allowable.  Respondent's delay in disallowing the future deductions and credits claimed by petitioners is not evidence of affirmative misconduct by respondent, especially in light of the changes made on the 1987 return and later returns in an apparent attempt to avert respondent's notice.

Because petitioners have not met the threshold requirement for equitable estoppel against the government, we need not address the traditional conditions for application of equitable estoppel.

To reflect the foregoing,

Decisions will be entered

under Rule 155.